NELLIE CLEMENS, as Administratrix, etc., of JOHN CLEMENS, Deceased, Respondent, *v.* JOHN BENZINGER and Another, Doing Business under the Firm Name of BENZINGER & SON, and Another, Appellants.

Fourth Department, January 14, 1925.

**Negligence — action for death of plaintiff's intestate — intestate was employed by contractor who was engaged in erecting structural steel for grand stand — usual method of erecting columns was to fasten base to anchor bolts in concrete and then adjust cross beams — defendant, concrete contractor, after omitting to insert anchor bolts for some columns, drilled holes in concrete and put in different style of bolts under direction of defendant architect — without notice of insecurity of said anchor bolts employer set up column which fell and killed intestate — both defendants are liable — absence of contract relation between intestate and defendant contractor does not bar recovery.**

In an action to recover for the death of plaintiff's intestate, who, at the time of the accident causing his death, was an employee of a contractor engaged in the erection of structural steel for a grand stand, the jury properly returned a verdict in favor of the plaintiff and against the defendants, the concrete contractor and the architect, since it appears that the defendant contractor was required to insert anchor bolts in the concrete for the purpose of anchoring steel columns to be erected by the intestate's employer; that at about the time the columns were to be erected it was found that anchor bolts for some of the columns had not been placed in position; that the defendant contractor under the direction of the defendant architect drilled holes in the concrete, inserted a different style of anchor bolt, and filled the remaining space in the hole with a rich mixture of concrete; that the usual method of erecting the columns was to place them in position and secure them by anchor bolts, and thereafter without any further support to erect the cross beams thereon; that the intestate's employer, without knowledge that a different style of anchor bolt had been used, and without knowledge that the concrete in which the anchor bolts that were not originally placed according to specifications were embedded, had not hardened sufficiently to bear the strain of the column, set up a column and secured it to the anchor bolts thus embedded; and that the column so erected fell because of the insecurity of the anchor bolts, struck the plaintiff's intestate and caused his death.

While the jury might have found that the intestate's employer was negligent in relying on the strength of the anchor bolts as a support, when the wet condition of the concrete and the danger therefrom ought to have been known to it, such negligence on the part of intestate's employer does not necessarily break the chain of legal causation, for the jury might have found that such omission, even though negligent, was one that the defendant contractor, acting as a reasonable man dealing with a dangerous situation, should have foreseen. Whether or not the intestate's employer knew of the condition and acted negligently was a question of fact for the jury.

The absence of contract relation between the intestate and the defendant contractor, or between the intestate's employer and the defendant contractor, does not bar recovery, for where one creates a situation which is inherently dangerous for persons who thereafter use it in the way that it is intended to be used, or

in the way the creator of the danger knows it is to be used, the person from whose affirmative act the danger arises is responsible to the one receiving injuries through such use.

The defendant architect may be held liable for its failure to notify the intestate's employer of the actual conditions, after authorizing and directing the placing of the anchor bolts in the drilled holes with their strength as supports wholly dependent upon the resistence of the still unhardened concrete at a time when it was apparent that the intestate's employer, pursuing the same method of work that it had been using, had relied upon the strength of the bolts in putting the steel columns in place.

SEARS, J., dissents, with memorandum.

APPEAL by the defendants, John Benzinger and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 26th day of March, 1924, upon the verdict of a jury for $15,000, and also from an order entered in said clerk's office denying the defendants' motion for a new trial made upon the minutes.

*Thomas C. Burke*, for the appellants Benzinger.

*Ralph K. Robertson* [*Simon Fleischmann, Martin Clark* and *Adrian Block* of counsel], for the appellant Osborne Engineering Corporation.

*Hamilton Ward* [*Dana L. Spring* of counsel], for the respondent.

HUBBS, P. J.:

The death of the plaintiff's intestate occurred during the construction of a new grand stand at the Buffalo base ball grounds. A steel column which had been hoisted into place and on which men were still working to attach beams or struts fell and in falling struck plaintiff's intestate, another workman but not engaged in working on this column, and caused him injuries from which he died.

At the time of his death deceased was in the employ of the Bancroft-Jones Corporation which had a contract with the owners of the grounds to furnish and erect all structural steel upon the stand. The defendants Benzinger also had a contract with the owners to furnish all materials and do all work for the construction and completion of the stand except furnishing and erecting the structural steel.

Both these contracts provided that the work should be done according to drawings and specifications prepared by the defendant Osborne Engineering Corporation, which as supervising engineer had complete charge of construction.

The grand stand was built of concrete with steel columns supporting steel trusses for the roof. These columns were in the shape of H-beams, twenty feet in height with a base plate eight inches by eighteen inches in dimension in which there were holes to permit the anchor bolts to pass through. The columns weighed

about 610 pounds. The plans provided for two anchor bolts for each column to be set by the defendants Benzinger when the concrete for the floor was poured, the bolts to be imbedded in the concrete to a depth of about thirty inches and the threaded end to project four inches above the surface of the concrete floor. The columns were placed erect in position by a derrick, being let down over the anchor bolts which then passed through the openings in the base plates intended for them. Then nuts were screwed down onto the bolts. The columns were then left standing without any bracing, being held in place by the anchor bolts. Workers would climb up the columns and the adjoining ones and by the means of blocks attached at the tops pull up the cross struts and cross beams and when raised to the proper height, fasten them in place, thus tying the columns together. The general plan furnished by the defendant Osborne Engineering Corporation to the Bancroft-Jones Corporation did not specify the type of anchor bolts, except as to the size and length. The Bancroft-Jones Corporation, however, prepared detailed plans which received the approval of the defendant Osborne Engineering Corporation and these plans showed anchor bolts with an L or lug of about two inches in length running at right angles to the main shaft of the bolt at its lower end. The Bancroft-Jones Corporation's contract required that company to furnish the anchor bolts to the defendants Benzinger and the Benzingers' contract required them to put these bolts in place at the time the concrete was poured for the floors. The anchor bolts actually furnished by the Bancroft-Jones Corporation were in accord with the description of them in the detailed plans. When the defendants Benzinger came to pour the concrete floor they imbedded the anchor bolts for the first and fourth of each group of four columns but omitted those for the two intervening ones. A number of weeks elapsed and the cement floor had become completely hardened before the Bancroft-Jones Corporation started erecting the columns. The superintendent of that company, then discovering the omission of the bolts, called the situation to the attention of the superintendent of the defendant Osborne Engineering Corporation. The superintendent of the Osborne Engineering Corporation in turn directed the defendants Benzinger to drill holes in the concrete, to cut off part of the L or lug from the bolts leaving only as much of it as would pass down into the drilled holes, then to drive the bolts into the holes drilled in the cement and fill the holes with grouting around the bolts. This plan was followed and the work on this was commenced three or four days before the accident. About one-half to five-eighths of an inch of the lug was left upon the bolts and the bolts were driven

in and grouted in the holes by pouring in sand and cement in equal parts. The bolts for the column which fell and caused the death of plaintiff's intestate were put in place in this manner on the day before the accident. The fall of the column pulled the anchor bolts at the base of the fallen column up about six inches and bent them over. After the accident green or only partially hardened cement was apparent at the top of the holes. The cement poured into the drilled holes would not harden fully in less than three weeks although it would appear hard at the surface very quickly and like the rest of the cement floor. There was evidence from which the jury could have found that bolts furnished with an expansive end at the bottom either by a wedge in a split end or other similar device would have supported the columns without regard to the grouting as would the bolts actually used even with the lugs cut off, had the cement been allowed to harden completely.

There was also evidence to the effect that the Bancroft-Jones Corporation when erecting the column did not know that the bolts which were used in the drilled holes were not split end or expansion bolts. Under these circumstances questions of fact for the jury were presented as to the negligence of both the defendant Osborne Engineering Corporation and of the defendants Benzinger. As to the latter, negligence could be predicated upon the failure to use split end or expansion bolts, or if such bolts were not used upon the failure to notify the steel erector of the kind actually used. The jury might well say that the fact that the steel erector was already engaged in erecting some of the columns at the very time the bolts were being grouted in, made it obviously necessary for the defendants Benzinger in the exercise of due care to use such bolts as would enable the erector to proceed in the usual way without delay or give such notification that the steel erector might modify the method of doing the work so as to insure safety to the workmen. In the latter case guys and other supports could have been used to secure stability without reliance upon the anchor bolts for support while the grouting was still unhardened. There was proof that the mode of erecting employed by the Bancroft-Jones Corporation, with reliance upon the anchor bolts for support of the columns, was an ordinary and usual method for the prosecution of such work.

The jury, to be sure, might have found that the Bancroft-Jones Corporation was negligent in relying on the strength of the anchor bolts as a support when the wet condition of the cement and the dangers therefrom ought to have been known to that company and put it on inquiry as to the condition at the lower end of the bolts. But such negligence on the part of the Bancroft-Jones

Corporation does not necessarily break the chain of legal causation, for the jury might say that such omission even though negligent was one that the defendants Benzinger, acting as reasonable men, dealing with a dangerous situation, should have foreseen. (*Rose-brock* v. *General Electric Co.*, 236 N. Y. 227.) On the other hand, if the Bancroft-Jones Corporation knew the condition and acted in negligent disregard of the dangers of which it was fully advised, the chain of causation was broken. Whether that company did or did not so act was a question of fact.

The absence of contract relation between the deceased and the defendants Benzinger and even between the deceased's employer, the Bancroft-Jones Corporation, and the defendants Benzinger is not a bar to recovery. Where one creates a situation which is inherently dangerous for persons who thereafter use it in the way it is intended to be used or in the way that the creator of the danger knows it is to be used, the person from whose affirmative act the danger arises is responsible to one receiving injuries through such use. (*Connors* v. *Great Northern Elevator Co.*, 90 App. Div. 311; affd., 180 N. Y. 509; *MacPherson* v. *Buick Motor Co.*, 217 id. 382; *Rose-brock* v. *General Electric Co., supra.*)

As to the defendant Osborne Engineering Corporation negligence may be based on its failure to notify the Bancroft-Jones Corporation, the steel erector, of the actual conditions after authorizing and directing the placing of the anchor bolts in the drilled holes with their strength as supports wholly dependent on the resistance of the still unhardened cement at the time when it was apparent that the erector, pursuing the same method of work that it has been using, would rely upon the support of the bolts in putting the steel columns in place. This was not mere non-feasance for which a supervising engineer or architect would not be liable to any one but the owner with whom there was privity of contract. (*Potter* v. *Gilbert*, 130 App. Div. 632; affd., 196 N. Y. 576.) For defects in the original plans and the approved detailed plans arising from negligence on the part of the Osborne Engineering Corporation, that company would clearly be responsible. (*Ryan* v. *Feeney & Sheehan Building Co.*, 239 N. Y. 43, 45.) When the defendants Benzinger deviated from the original plans, a new situation arose which required a new plan, or at least a new direction to the contractors in place of the original plan. The duty to take care of the situation which had then arisen rested on the defendant Osborne Engineering Corporation, and it recognized such duty and took steps in accordance with it. The superintendent of that company gave direction as to how the problem was to be met. Negligence in this act is the same as negligence in respect

to the original plans, and gives rise similarly to a cause of action in favor of one who receives injury therefrom.

It is urged by the appellants that reversible error was committed by the learned trial court in the charge. We think that the charge considered as a whole fairly presented the questions for determination to the jury.

Clark, Davis and Taylor, JJ., concur; Sears, J., dissents in a memorandum.

Sears, J. (dissenting):

I dissent upon the ground that the charge permitted the jury to predicate a verdict upon negligence on the part of the defendants Benzinger in failing to set the anchor bolts in the first instance when the concrete for the floors was poured, and on the part of the defendant Osborne Engineering Corporation in failing in its superintendence to require the anchor bolts then to be set. Exceptions raising these points were taken by both defendants. The fault in these respects had spent its force when all parties, including the steel erector, gained knowledge of the actual situation and continued operations with the actual situation in mind. (*Rosebrock v. General Electric Co.*, 236 N. Y. 227.) This negligence was, therefore, not the proximate cause of the accident.

Judgment and order affirmed, with costs.