EDWARD ZIMMER, APPELLANT, V. JAMES H. BRANDON ET AL., APPELLEES.

278 N. W. 502

FILED MARCH 18, 1938. No. 30048.

*Woods, Aitken & Aitken,* for appellant.

*Baylor, Tou Velle & Healey,* contra.

Heard before GOSS, C. J., ROSE, EBERLY, CARTER and MESSMORE, JJ., and WILLIAM A. DAY, District Judge.

WILLIAM A. DAY, District Judge.

This is an appeal from an order of the district court for Lancaster county, Nebraska, directing the jury to return a verdict for the defendants in an action for personal injuries sustained by the plaintiff on account of the alleged negligence of the defendants.

An examination of the record reveals that this is an action for personal injuries alleged to have been sustained by the plaintiff, which he suffered when a wrought-iron upright pole, approximately 24 feet in height, on which he was working, toppled over, throwing him to the ground. The defendant, the Lincoln Hatchery, the plaintiff's employer (which is made one of the defendants by reason of having paid compensation insurance), had employed the defendants James H. Brandon and Arva V. Hartson to do certain plumbing and pipe-fitting work in connection with the construction of a gasoline filling station. The defend-

ant, the Lincoln Hatchery, also employed the plaintiff to assist in the general construction work of the filling station. During the course of construction, and on the day that the plaintiff was injured, the defendants Brandon and Hartson had been instructed by the Lincoln Hatchery to join together, by means of a coupling, two pieces of three-inch wrought-iron pipe. The shorter piece was about 3 feet in length, and the longer piece was 24 feet in length. The defendants were advised that the pipe, when so joined, was to be erected in an upright position, to which braces and brackets were to be attached, as well as lighting fixtures, and that a baked-enamel sign, weighing some 70 pounds, was to be suspended from the brackets. Braces, brackets and the enamel sign were lying beside the pipe at the time the defendant Brandon and Hartson were directed to work. The defendants were instructed to re-thread the longer piece of pipe, the threads of which had been painted. They joined the two pieces of pipe together and then helped the plaintiff and the electrician, who was working about the place, raise the pole so joined to an upright position, and place the end to which the short piece was attached into a hole which had already been prepared in a concrete island in the filling station drive. After the pole had been placed in position, as described, the electrician then placed a ladder against the pole so erected, and spent the remainder of the morning working at the top of the pole, wiring the electrical fixtures attached to the bracket; all of which, together with the braces, had been attached to the pole before it was erected in its upright position. During all the time that the electrician was so working, the defendants were in plain sight of him, as they were working in close proximity to him in completing the installation of the gasoline pumps.

At lunch time, while the electrician and the defendants had gone to lunch, the plaintiff, making use of the electrician's ladder, which had been left erected against the upright pole, prepared to attach the diamond-shaped baked-enamel sign to the bracket. He ascended the pole and at-

tached to the center of the bracket a single block with a rope through it, and returned to the ground and then attached the rope to a corner of the sign and pulled it up into position. He then had his boy hold the rope while he again ascended the ladder and hooked the sign on the hook nearest the pole, then reached out to attach the sign to the hook farthest from the pole, at which time the upright pole fell, hurling him to the ground, and as a result of the fall he sustained certain injuries which are permanent in their nature.

Inspection of the pole after it had fallen to the ground revealed that the long upright pole had separated from the coupling, which was about a foot above the ground, causing the long piece to fall its entire length of 24 feet. Further examination disclosed that neither the pole nor the coupling had been broken; that the coupling had not split or widened; that neither the threads on the long pole nor on the coupling were stripped, and from the brightness of the exposed threads, it was evident that only two or three threads of the long pole and the coupling had been engaged or screwed together. The evidence of expert witnesses on behalf of the plaintiff reveals that the standard practice in joining such pipes, as in this case, required that the pipe threads be screwed or entered into the coupling so that not less than ten full threads were engaged, and that engaging only two or three threads of the pipe into the coupling would be decidedly below all recognized and standard practice, and would not be considered satisfactory or suitable work. Testimony further reveals that had the pole been properly assembled it would have withstood the weight and force directed against it at the time of the plaintiff's fall, and in fact it would have withstood from six to eight times the actual load applied.

The plumbing firm of Brandon and Hartson, in undertaking to assemble this upright pipe by joining the two pieces with a coupling, owed a duty to this plaintiff, and any other person rightfully on the premises, to perform the work in a proper and workmanlike manner, and with-

out negligence on their part. As plumbers they are charged with knowledge of what a proper and workmanlike assembly of the upright pole in question would be, and knowledge of the manner in which the pole was assembled was exclusively theirs, as they did the work. They were told for what purpose the pipe was intended to be used, and they knew or ought to have known, or saw or ought to have seen, the purpose for which the pole was being used, and the manner in which the sign and the electrical attachments thereto were being put in position. The electrician placed a ladder against the pole and climbed up it, within close proximity to where they were working on other work about the premises, and to say that they did not see him using the ladder in this manner, although there is no direct proof that they did see him, would be to draw an unwarranted inference. The testimony reveals that no warning was given to the electrician not to place the ladder against the pole and climb thereon, or that the pole was not properly united and would not sustain his weight and that of the ladder, or that it would be dangerous to climb thereon.

The defendants Brandon and Hartson, by attempting to assemble this upright pole, assumed a duty of assembling it in a good and workmanlike manner, and if a reasonable and prudent person under like circumstances, after having seen the use to which the pole was to be put, could reasonably have anticipated that some person would climb the pole in order to attach the sign thereto by means of a ladder, and put his weight upon the pole, then the defendants are liable for any injury that may have been sustained by any person rightfully upon the premises, as a direct and proximate result of their negligence, and in this case their negligence consisted of the improper and unworkmanlike manner of assembling the two pieces of pipe. Thus, it is to be seen that the rule is: "Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, an-

other person,. rightfully there,' will be in danger of receiving an injury, a duty to ' exercise ordinary care to prevent such injury arises; and, if such care is not exercised by the party on whom the duty rests and injury to another person results therefrom, liability on the part of the negligent party to the person injured will generally exist, in the absence of any other controlling element or fact, and this,' too, without regard to the legal relationship of the parties." *Lisle v. Anderson*, 61 Okla. 68, 159 Pac. 278. See *Wiseblood v. Omaha Merchants Express & Transfer Co.*, 98 Neb. 757, 154 N. W. 539; *Oregon-Washington R. & N. Co. v. Branham*, 259 Fed. 555; *Moll v. Bester*, 177 Minn. 420, 225 N. W. 393; *Hall v. Barber Door Co.*, 218 Cal. 412, 23 Pac. (2d) 279; *Garrity v. Newman & Co.*, 202 Ill. App. 194; *Pennsylvania Steel Co. v. Elmore & Hamilton Contracting Co.*, 175 Fed. 176; *Clemens v. Benzinger*, 211 App. Div. 586, 207 N. Y. Supp. 539; *O'Neil v. National Oil Co.*, 231 Mass. 20, 120 N. E. 107; *Kowalsky v. Conreco Co., Inc.*, 237 App. Div. 23, 260 N. Y. Supp. 688; *Connick v. Craig, Inc.*, 107 N. J. Law, 375, 153 Atl. 631; *Howard v. Sacks, Inc.*, 76 S. W. (2d) (Mo. App.) 460; *Mahon v. Spence*, 11 La. App. 604, 123 So. 349; 45 C. J. 883.

"A motion to direct a verdict at the close of plaintiff's evidence is, in effect, a demurrer to the evidence, and where the trial court sustains such motion, and dismisses the action, the appellate court, in reviewing such decision, will assume the existence of every material fact which the evidence on behalf of the plaintiff tends to establish and, in addition, give the plaintiff the benefit of the logical inferences therefrom." *Zielinski v. Dolan*, 127 Neb. 153, 254 N. W. 695. See *Mahon v. Spence, supra; Howard v. Sacks, Inc., supra; Colbert v. Holland Furnace Co.*, 241 Ill. App. 583, Aff. 333 Ill. 78, 164 N. E. 162; *Kowalsky v. Conreco Co., Inc., supra; Tralle v. Hartman Furniture & Carpet Co.*, 116 Neb. 418, 217 N. W. 952.

The plaintiff's evidence in this case clearly establishes that the plumbing firm of Brandon and Hartson negligently

assembled and constructed the wrought-iron pole, and that the said negligence on their part was the sole and proximate cause of the plaintiff's injury. The appellate court, where the trial court directs a verdict against the plaintiff, will assume the existence of every material fact which the evidence of the plaintiff tends to establish, and also give the plaintiff the benefit of the logical inferences therefrom. The record in this case contains such overwhelming proof of the defendants' negligence that it is almost unnecessary to comment upon it. The evidence reveals that the two pipes were scarcely joined together, and in no event were they joined to the extent of more than two or three turns, and the evidence clearly establishes that ten to twelve turns would be the proper and standard method of joining pipes of this kind to be used for the purpose for which these were to be. The testimony reveals that there was no stripping or tearing of the threads, and that neither the threads in the coupling nor those on the end of the long piece of pipe were damaged or stripped in any degree, and that there was no breaking of the pipe or failure of the material. Therefore, the only logical conclusion to be reached from the plaintiff's evidence, giving it the benefit of all proper inferences, is that had the pipe been properly assembled it would have borne the plaintiff's weight without question, and that by reason of the negligent and improper manner of assembling the pipe it fell, causing the plaintiff's injuries.

We are now confronted with the question of whether or not the plaintiff in this case was guilty of contributory negligence sufficient to enable us to say that, as a matter of law, the court was justified in directing a verdict against him. Therefore, we must consider what the plaintiff did in this case. He climbed up the pole on the ladder that was already there, that had been used by the electrician, and attempted to fasten the sign to the pole, at which the pole came apart, causing him to fall and to receive the injuries complained of. Can it be said that, as a matter of law, he was negligent if he did not place the ladder against the

pole in a certain position? The evidence clearly establishes that if the pole had been properly assembled, according to the standard and recognized practice, it would have borne six to eight times his weight. Therefore, we do not believe, as the defendants contend, that it could be said, as a matter of law, that the plaintiff was guilty of such negligence as would defeat recovery by failure to put the ladder in a certain position or use a stepladder or use some means of hanging this sign other than the natural and most obvious way; that is, by placing a ladder against the pole and climbing up the same. The direct and proximate cause of the accident was not the plaintiff's failure to use some other means of hanging the sign than he chose to adopt, but rather the negligent and unworkmanlike manner in which the pole was assembled by the defendants. In any event, the degree of the negligence of the plaintiff in this case is a question of fact, and one wherein reasonable minds might reach different conclusions as to its existence, and should properly have been submitted to the jury. Therefore, the rule in a case of this kind is: "The existence of negligence and contributory negligence in an action for personal injuries is, ordinarily, a question of fact, and where the evidence in relation thereto is such that minds may reasonably reach different conclusions as to their existence, such question should be submitted to the jury." *Sgroi v. Yellow Cab & Baggage Co.*, 124 Neb. 525, 247 N. W. 355. See Comp. St. 1929, sec. 20-1151; *Pinches v. Village of Dickens*, 127 Neb. 239, 254 N. W. 877; *Builders & Manufacturers Mutual Casualty Co. v. Butler Bros. Bldg. Co.*, 192 Minn. 254, 255 N. W. 851; *Mahon v. Spence, supra.*

We are not unmindful that the defendants contend, and it is true, that there was no contractual relationship between the plaintiff and the defendants, and that because of the absence of this contractual relationship they owed the plaintiff no duty, and could not, therefore, be liable for any injury sustained by him. However, this case is one sounding in tort and is not based on any contractual

duty. The defendants were obligated to do their work in a proper and workmanlike manner, without negligence, so that any person rightfully upon the premises might not be injured by their negligent conduct.

The defendants also contend that the pole was not being used for the purpose for which it was intended. The purpose of the pole in this case was to support a sign, and how the defendants expected the plaintiff or the defendant, the Lincoln Hatchery, to suspend a sign therefrom and attach electrical fixtures thereto without putting some weight upon the pole is not answered to our satisfaction.

The defendants also put considerable stress upon the exact manner in which the plaintiff attempted to hang the sign, but the evidence clearly establishes that if the pole had been assembled in accordance with recognized standards it would have borne the plaintiff's weight many times over, so we do not believe any weight can be given to the defendants' theory that, had the plaintiff put his weight upon the pole in a different manner, the accident would not have occurred. The plaintiff had the duty of using ordinary care for his own safety, but he undoubtedly had a right to assume that the pole was properly joined.

For the reasons heretofore given, we feel that the district court was in error in directing a verdict for the defendants in this case, and the judgment of this court is that the judgment be reversed and the cause remanded.

REVERSED.