Wiseblood v. Omaha Merchants Express & Transfer Co.

BARNEY WISEBLOOD, APPELLEE, v. OMAHA MERCHANTS EXPRESS & TRANSFER COMPANY, APPELLANT.

FILED OCTOBER 16, 1915. No. 18308.

1. Negligence: PERSONAL INJURY: LIABILITY. Where a transportation company, employed for a consideration to move a heavy machine from the factory of a manufacturer to the freight depot of a railroad, furnishes a broken or defective appliance for that purpose, by reason of which one of the servants of the manufacturer is injured while assisting in an effort to place the machine on the wagon of the transportation company, the last named company is liable for damages to the person injured.

2. ——: ——: ——. A settlement with his employer, by the injured person, and a release which expressly reserves his right of action against the transportation company, will not defeat his action against the company which furnished the broken or defective appliance.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. Affirmed.

Morsman, Maxwell & Thompson, for appellant.

Martin L. Sugarman, W. C. Fraser and J. C. Kinsler, contra.

BARNES, J.

This is an appeal from a judgment of the district court for Douglas county in an action for personal injuries sustained by the plaintiff on account of the alleged negligence of the defendant.

An examination of the record will show the following facts: F. P. Kirkendall & Company was running a shoe factory in the city of Omaha, and the appellee was in the employ of that company at the time he received the injuries for which the judgment in this action was recovered. The Omaha Merchants Express & Transfer Company was engaged in the transportation of freight from factories and warehouses to the various freight depots in the city of Omaha. On the 4th day of June, 1912, Kirken-

dall & Company telephoned to the Omaha Merchants Express & Transfer Company to get a heavy shoe machine, which was ready for shipment, and take it from its building to the Burlington freight depot. Appellant was advised that the machine weighed about 2,000 pounds, and, in answer to the inquiry, was told that Kirkendall & Company had no appliances for loading the machine, and that appellant should send everything that might be needed for the purpose. Shortly afterwards appellant sent one of its men to get the machine and take it to the depot. He was provided with a wagon and team and certain moving appliances, consisting of blocks, ropes, rollers, and two heavy skids or planks. He drove into the alley at the rear of the Kirkendall building and backed his wagon up to the south door. The sill of the door was about 18 inches above the bed of the wagon. He then went into the building and asked where he would find the machine that he was to take to the depot. It had already been crated for shipment and was standing near the door at which the wagon had been placed. The driver attempted to move the machine, but, finding it too heavy, he asked for help. He was told that there was no one to help him, and he made another attempt to move it, but without success. Edward C. Beil, who was in the employ of Kirkendall & Company, and the person who had telephoned to the appellant, sent an inquiry by the elevator boy to one Shanahan, who was the superintendent of the Kirkendall factory, and asked for some men to be sent down to help load the machine onto the wagon. Shanahan thereupon sent Barney Wiseblood, the appellee, and several other men, among them William McGill, to the first floor, with instructions to help put the machine onto the wagon. The driver, with the assistance of these men, rolled the machine around to the door and got it in place for loading. He then took two skids, which appellant had sent with him for the purpose, and placed them so as to extend from the door-sill down onto the bed of the wagon. Each of these skids was about three inches thick, four inches wide, and twelve feet long. They were laid so that they were about eighteen inches apart, the

north ends extending up about four or five inches onto the door-sill. Each of these skids had been fitted with a heavy iron strip about two inches wide, which was bolted to the lower side of the skid or plank, and turned downwards at the outer or north end, thus forming a hook or clamp about two inches in width, which should hold onto the door-sill, or presumably onto anything on which it rested. The easterly one of the two skids was provided with such an attachment, including the hook, but the hook on the westerly one of the two skids had been broken off, and this was the defect which it was claimed subsequently caused the injuries to the plaintiff. After appellant's driver put the skids in place to lower the machine onto the wagon, McGill noticed the defective condition of the westerly skid, and called it to the attention of appellant's driver, stating that he did not believe it would hold. The driver insisted on using the skid, and stated that it would hold, and said that he would hold the opposite end of it with his crowbar. He then got into the wagon, put his bar under or against the south end of the defective skid, and told McGill he was ready for the machine to be tipped over onto the skids. Wiseblood had been stationed on the west side of the machine to steady it as it went down the skids onto the wagon. As soon as the machine went onto the skids, the west one with its defective hook, in spite of the fact that the driver was holding it with his bar, gave way or slipped off the door-sill, and caused the machine to be thrown over onto Wiseblood, who went to the ground under its weight. Appellant's driver immediately drove away with his wagon and skids and left the others to remove the machine from the body of Wiseblood. The testimony shows that the east skid, which was provided with a hook, clung to its place on the door-sill, and remained there when the machine tipped over to the west and fell to the ground. Wiseblood received injuries, which were not only serious, but permanent. A guardian was appointed for him, who afterwards executed a separate release to F. P. Kirkendall & Company. The consideration of this release was $1,000, and it was expressed therein

that it was a settlement with Kirkendall & Company only, and the right was reserved thereby to bring an action against the Omaha Merchants Express & Transfer Company. On the trial the jury found generally for the plaintiff, and that he had been damaged in 'the sum of $6,500. After deducting the $1,000, which had been paid to him by Kirkendall & Company, a verdict was returned in Wiseblood's favor for $5,500, on which the judgment complained of by this appeal was rendered.

The president of appellant company, on the trial, testified, in substance: We have a pile of tools, plates, planks, rope and tackle that would fill one-half of this room clear to the ceiling, and jacks and bars, and plates, and everything for anything you want to use them for. Whenever a teamster is sent to the barn to get appliances he makes his own selection from what he finds there. He goes out and gets the stuff. There is no serious conflict in the evidence in this case, as we read the record.

Appellant contends that, granting the skid in question was defective, still the furnishing of the same to Kirkendall & Company did not make appellant liable for injuries received by Wiseblood, because there intervened an independent responsible agent breaking the causal connection between appellant and Wiseblood; in other words, that appellant was not liable for injuries to Wiseblood by furnishing defective appliances to Kirkendall & Company, Wiseblood not being the servant of appellant. It is argued that, because there was no contractual relation existing between Wiseblood and the appellant, it was not liable to him for the injuries which he had sustained. We think this contention can hardly be sustained. Thompson in his Commentaries on the Law of Negligence (Vol. 8, sec. 831) says: "It may be stated as a general rule that one who undertakes to furnish appliances for use by others assumes the duty to furnish proper appliances, and that a negligent performance of such duty resulting in injuries to those lawfully using the appliances renders the person furnishing the appliance liable for such injuries, and such obligation does not depend on a contractual relation be-

tween such person and the person injured, but rests rather on a failure to perform a duty assumed by one which results in injury to another." This rule is supported by *McMullen v. City of New York*, 97 N. Y. Supp. 109; *Dougherty v. Weeks & Son*, 111 N. Y. Supp. 218; *Pennsylvania R. Co. v. Hummel*, 167 Fed. 89; *Roddy v. Missouri P. R. Co.*, 104 Mo. 234; *Savannah, F. & W. R. Co. v. Booth*, 98 Ga. 20; *Chicago, I. & L. R. Co. v. Pritchard*, 168 Ind. 398; *Sheltrawn v. Michigan C. R. Co.*, 128 Mich. 669; *Hale v. New York, N. H. & H. R. Co.*, 190 Mass. 84; *Perrine v. Union Stock Yards Co.*, 81 Neb. 790.

Appellant contends that the trial court erred in refusing to direct a verdict in its favor. This assignment, of course, again raises the contention that there was no contractual relation existing between appellant and plaintiff at the time he was injured. It is further urged that the skid was not defective. This question, however, was submitted to the jury, and it was decided by that body that the skid was defective, as alleged in the plaintiff's amended petition, and that the use of the defective skid furnished by appellant caused plaintiff's injury. The undisputed evidence shows that the appellant's driver was using the skids in his own way at the time of the accident, notwithstanding the suggestion of McGill that the skid was not safe; that the skid with the unbroken hook held its place, while the one with the broken hook gave way and caused the machine to be thrown upon the plaintiff.

It is neither necessary nor profitable to discuss appellant's other assignments of error. As we view the record, the judgment of the district court should be, and is,

AFFIRMED.

FAWCETT, SEDGWICK and HAMER, JJ., not sitting.