. Crow, J.,.
Plaintiff in error, plaintiff below, sued for unpaid quarterly rentals of an electric welding *271 machine known as a spot welder, under a written contract, the material provisions of which are the following:
The machine to be leased for use by defendant in the manufacture of corrugated metal corn cribs, and to be in condition for attachment of wiring for electrical current; installation to be made by defendant, and the apparatus to be kept in repair by the latter, who shall also furnish alternating current of specified voltage, at the machine, “to weld two pieces seven gauge of sheet metal of a total thickness of —;” and plaintiff “guarantees that the apparatus shall be well made of suitable material and free from electrical and mechanical defects;” and if at any time defendant desires to return the machine in good condition, less ordinary wear, f. o. b. plaintiff’s factory, same may be done by giving plaintiff in writing a “quarter’s notice,” and paying all sums due plaintiff to the date of such return.
The machine was installed by defendant in its factory.
Defendant remitted to plaintiff the first quarterly installment for the use of the machine shortly after the latter had been received at its factory, but before operating the same, and the second quarterly installment was remitted by defendant to plaintiff subsequent to the controversy which arose over the alleged failure of the machine to do the work for which defendant obtained it. In other words, defendant paid plaintiff from the 14th of February, 1918, the date from which it claims to have received the machine, until the 13th of August, 1918, prior to which latter date it ceased use or attempted use of the machine.
The main defense in defendant’s answer is in substance as follows: that prior to the execution of tñe *272 written contract in controversy it was engaged in the manufacture of metal corn cribs, and that by circulars and correspondence plaintiff represented to defendant that the machine would without skilled labor weld the metal sheets used by plaintiff in the construction of corn cribs, sixty per cent, stronger than when joined by bolts or rivets, as had been the process in defendant’s factory, and that said metal sheets could be satisfactorily welded by said machine, which machine would be adaptable for defendant’s said work; that plaintiff sent a personal representative to its factory, who inspected the work proposed to be done by the 'machine, which representative after having made such inspection assured defendant that the machine would weld and join together the parts of the crib in a perfectly satisfactory manner and that the same would be entirely suitable for said work, and recommended that defendant use the type of machine provided for in the contract; that defendant had no knowledge concerning the ability of the machine to perform the work for which it intended to use the machine; that defendant relying solely on said representations, entered into the contract; that all said representations so made by plaintiff were untrue; that on the 22d of July, 1918, defendant took the machine out of its factory, packed it for shipping, and notified plaintiff that the machine would not do the work as represented and that defendant would deliver the machine to plaintiff, and requested that the latter direct defendant where it desired the machine delivered, but that plaintiff neglected to give defendant shipping directions; and that thereafter defendant shipped the machine to plaintiff.
*273 The testimony introduced in behalf of defendant abundantly tends to prove its said defense, and to further prove that notwithstanding the attempt of plaintiff to make the machine operate, as contemplated by the parties, it failed to do so after reasonable effort by defendant’s employes.
The trial resulted in a verdict and judgment for defendant.
The trial court eliminated from the case defendant’s averments of special damage resulting from work imperfectly done by the machine on cribs shipped by defendant to customers, and restricted the defense to an extinguishment of plaintiff’s claims for rentals subsequent to the first two quarterly periods, which, as already stated, defendant had paid.
Defendant did not question the right of plaintiff to retain the two payments, and does not attack by cross-petition in error the correctness of the trial court’s action in removing from the case its right to recover special damage. Consequently those two matters will not be discussed.
In submitting the case to the jury the trial court treated the transaction as though there had been a sale of the property by plaintiff to defendant, rather than a bailment for hire, and applied the law governing implication of warranty of fitness for use, where the particular purpose for which an article is sold is made known to the seller and reliance is placed by the buyer on the skill or judgment of the seller.
Upon that action of the trial court plaintiff in error relies for reversal of the judgment.
Two questions are involved in the position of plaintiff in error:
*274 1. Is there such essential similarity between a sale of personal property and a bailment for hire, as requires or justifies application of the same rule relative to warranty of fitness?
The only basic facts which distinguish a sale from a bailment are the requirement of restoration of the article delivered and the passing or not passing of title from one to the other.
Implication of warranty of fitness of the article sold for. a particular purpose existed under special circumstances at common law, and now is statutory in Ohio. The same reasons, namely, considerations of ordinary integrity, upon which the implication existed a.t common law, manifestly justify a like doctrine in relation to a bailment for hire, at least when attended by parallel facts, because with the exception just pointed out there is no difference between a sale of personal property and a letting of it for hire.,
The exact question in hand has not been decided in any reported case in Ohio. However, in 6 Corpus Juris, at page 1117, it is stated that in a bailment of hiring there is imposed on the bailor, in the absence of specific contract or representation, an obligation that the article hired shall be reasonably fit for the purpose of its intended use, when such purpose has been made known to the bailor prior to the bailment; and the doctrine thus expressed is supported by numerous cases there cited.
We therefore accept and adopt as correct the legal principle there stated, and approve the action of the trial court in its recognition and application of it to the instant case, notwithstanding the inadvertence in referring to plaintiff and defendant as seller and buyer instead of bailor and bailee.
*275 2. There being present in the contract in issue an express warranty of proper construction, suitableness of material, and freedom from electrical and mechanical defects, it is necessary to decide,whether the implied warranty can obtain, in view of the rule which prohibits parol evidence in relation-to written contracts.
This feature of the case can be disposed of by the simple test of whether the implied warranty is irreconcilable with the one expressed, inasmuch as*there is no language in the contract precluding ¿n implied warranty — that is to say, the contract itself, does not provide that it contains all the obligations of the respective parties. - •
It is a general rule that an express warranty in a written contract excludes therefrom an implied warranty on thé same subject, but' both an express and an implied warranty may exist, when compatible with each other. 1 Elliott on Contracts, 227 and 228, and cases there cited.
In the present case there is no repugnancy between the provision that the machine shall be well made, of suitable material, and free from, electrical, and mechanical defects, and the implied warranty that it shall be reasonably fit for thé known purpose for which plaintiff rented it to defendant, in view of the added fact that defendant had no knowledge concerning the adaptability of the machine to its use prior to the execution of the contract.
Finding no error, the judgment is affirmed. ■

Judgment affirmed.

:Hughes and Warden, JJ., concur.