**PRICE BOILER AND WELDING COMPANY, 925 Summit Street, Toledo, Ohio, Plaintiff,**

v.

**Albert W. GORDON, doing business as General Welding and Erection Company, 1918 Tuscola Street, Flint, Michigan, Defendant.**

**No. 1530.**

United States District Court
E. D. Michigan, N. D.
Feb. 13, 1956.

---

16. See Ceballos v. Shaughnessy, 2 Cir., 229 F.2d 592.

Ohlinger, Koles, Wolf & Flues, Toledo, Ohio, Burke, Burke & Ryan, Ann Arbor, Mich., for plaintiff.

Joseph & Joseph, Flint, Mich., Bartlett, King & Learman, Bay City, Mich., for defendant.

PICARD, District Judge.

On or about November 8, 1954, plaintiff, in Toledo, Ohio, made arrangements for the rental of a certain crane from defendant, in Flint, Michigan to put up a smokestack at the Electric Auto-Lite Company plant, Owosso, Michigan, on November 13. Verbal arrangements terminated in a letter from plaintiff to defendant, the first paragraph of which is as follows:

> "We wish to confirm our Mr. Enis' arrangements with you for the rental of your *twenty-five ton crane to set up a 5' diameter x 120' stack (weight approximately 12-½ tons)* at the Electric Auto-Lite Company, Owosso, Michigan, next November 13." (Emphasis ours.)

Then followed other details and accompanying the letter was a purchase order for the rental again containing instructions about the type of crane, the work to be done, the amount to be paid the operator per hour and arranging where and when the parties were to meet in Owosso. Defendant accepted the offer by telephoning plaintiff in Toledo.

In compliance with these arrangements defendant sent his crane to Owos-

so with a crew, operator and oiler, on Friday, November 12th, preparatory to getting everything ready for the next day. When the crane arrived at the job Enis showed defendant's operator the stack, the base on which he wanted the stack placed and suggested to the operator where the crane should be put. Together the parties considered possible "tipping", that is the chance of the crane tipping over in lifting the stack, and they then wired it down so it would not tip.

There was a chart in the crane operator's cabin specifying what the crane would do with various lengths of boom including the 100 feet boom brought by defendant, 10 feet more than plaintiff had suggested defendant should bring. The chart showed that the crane should have been able to raise the 25,000 pounds easily.

On Saturday, November 13, in erecting the stack with the 100 feet boom, the crane buckled; the stack fell to the ground; was rendered completely worthless except as scrap material, requiring the erecting of another stack at a cost of $5,745.13.

Plaintiff claims that since it had informed defendant of the nature of the job to be done that there arose an implied warranty when defendant sent the crane that it would do the work for which it was intended; that is, raise a stack of this weight (25,000 pounds) and put it on the base that had been provided where it could be bolted in by other helpers.

Plaintiff also claims that both defendant and its operator should have known that this crane would not do the work and should have apprised plaintiff's representative that the job would be a risky one at the least. On the other hand, defendant contends that the rental was only for a crane of 25 ton capacity and that the operator of the crane became the agent of plaintiff when he was on the job. In other words, defendant says, plaintiff got what it ordered.

Finally, we find that plaintiff did not order a crane of the "rated" capacity of 25 tons. It was an out and out order to furnish a

> "twenty-five ton crane to set up a 5′ diameter x 120′ stack (weight approximately 12-½ tons)".

## Conclusions of Law

The testimony proved that all Enis, who represented plaintiff, had to say about the work to be done was limited to his suggestion as to where the crane could be placed to accomplish lifting of the stack. He did not take over the operating of the crane and if he had it still would have been the duty of defendant's crane operator, Besemer, knowing that his crane would not lift the 12½ ton stack, at least with a 100 feet boom, to have advised plaintiff's agent. Besemer could not sit idly by and watch the bailee operate his crane in a manner that he knew to be negligent or to have his machinery attempt something that he knew or should have known it could not do, particularly when the probable results might be fatal to life or property. Plaintiff, through Enis, had to inform Besemer where the stack was so Besemer could proceed with his work. Plaintiff also had to tell defendant how much the stack weighed and when Besemer arrived on the job Enis had to show him the point where defendant wanted the stack placed. This he did. But when it came to operating that crane that's the very thing defendant had sent Besemer over to Owosso to do. The rest was up to Besemer. In fact, defendant charged plaintiff for Besemer's services and defendant paid Besemer. Plaintiff had no "control" over Besemer. Rockwell v. Grand Trunk Western Ry. Co., 253 Mich. 144, 234 N.W. 159. In this connection it will be well to note that when it came to the safety of the crane itself, that is, wiring it down so it couldn't tip over, defendant's crane operator took a very active part. But when it came to the most important part, that is the work of putting up the stack, could he, Besemer, refrain entirely from participating as the key man on that job? We think not. See 65 C.J.S., Negligence, § 99, p. 618, and Hilleary v. Bromley, 146 Ohio St.

212, 64 N.E.2d 832, 836, where the court said

"A person so supplying goods is required not only to give warning of dangers which he knows are involved in the use of the article, or which, from facts within his knowledge, he knows are likely to be so involved, but also to subject the article to such an inspection as the danger of using it in a defective condition makes it reasonable to require of him."

■■ We agree that there was an implied warranty here. As stated in Wiseblood v. Omaha Merchants' Express & Transfer Co., 98 Neb. 757, 154 N.W. 539, at page 541

"'It may be stated as a general rule that one who undertakes to furnish appliances for use by others assumes the duty to furnish proper appliances, and that a negligent performance of such duty resulting in injuries to those lawfully using the appliances renders the person furnishing the appliance liable for such injuries, and such obligation does not depend on a contractual relation between such person and the person injured, but rests rather on a failure to perform a duty assumed by one which results in injury to another.'"

■■ We hold that defendant knew or should have known that this crane would not do the work that it had been hired out to do. As also stated by the Supreme Court in Hilleary v. Bromley, supra, it was the duty of the bailor

"to make the chattel, which is the subject of bailment, safe for its intended purpose, or to inform the bailee of any unsafe condition in the chattel * * *."

and as said in Hoisting Engine Sales Co. v. Hart, 237 N.Y. 30, 142 N.E. 342, 344, 31 A.L.R. 536,

"There was an implied warranty that the thing would work as it was supposed to do."

In Shamrock Towing Co. v. Fichter Steel Corp., 2 Cir., 155 F.2d 69, the plaintiff engaged defendant's crane to lift a "Lidgerwood" engine from the deck of a scow to the wharf. The boom buckled and the engine fell on the deck damaging the scow and the engine. In holding the defendant liable for damage to both, the court at pages 71 and 72 said

" * * * the O'Boyle Company impliedly warranted that the crane was 'seaworthy': i. e. reasonably fit for the service to which it was to be put and in whose discharge it failed. There was no unusual disturbance of the water; the weight of the engine was not nearly as great as that which Miss O'Boyle had said the crane could bear, and its owner offered no excuse for the buckling of the boom. If the usual implied warranty existed, the O'Boyle Company was liable without limitation, for there is no difference in this regard between an implied, and an express, warranty. Cullen Fuel Co. v. W. E. Hedger, Inc., 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189. We can think of no reason which should take such a vessel out of the usual doctrine that upon a charter the owner warrants the craft as seaworthy. * * * although it would make no difference if the maritime law did not apply, because, treated merely as a bailment, the lease of the scow implied a similar warranty. Hoisting Engine Sales Co. v. Hart, 237 N.Y. 30, 142 N.E. 342, 31 A.L.R. 536."

In the case at bar the crane buckled, not because plaintiff had misinformed or failed to inform defendant of the job to be done, but because defendant had personally failed either to acquaint his own employee with the weight of the stack of if he did tell him, then Besemer forgot. Coupled with this is the negligence of defendant's employee when he arrived on the job in failing to learn for himself the weight of the stack so that he could determine, if necessary, whether his crane would do the work.

If using a 100 feet boom was more hazardous than a 90 feet boom (which, incidentally, was not proven) Besemer should have told Enis and Besemer knew—or should have known better—than to attempt the job. He had had thirty-five years experience.

Since the contract was consummated in Toledo, Ohio, the rights of the parties thereunder are determined by the law of Ohio. Meyer v. Richards, 163 U.S. 385, 16 S.Ct. 1148, 41 L.Ed. 199. However, it makes no difference whether the law of Ohio or Michigan is applied, because as in both, and in most states, the bailor for hire impliedly warrants the fitness of the thing bailed for the intended use known to the bailor. 8 C. J.S., Bailments, § 25, p. 258; The Thomson Spot Welder Co. v. The Dickelman Mfg. Co., 15 Ohio App. 270. See also Wujnovich v. Equipment Corporation of America, D.C., 54 F.Supp. 465.

Plaintiff should recover the full amount—$5,745.13.