IRVING LEASING CORPORATION, APPELLANT, *v.* M & H TIRE COMPANY ET AL., APPELLEES.

(No. 82-CA-73—Decided February 15, 1984.)

Mr. *Daryl R. Douple,* for appellant.
Mr. *Marshall Peterson,* for appellees.

WEBER, J. This appeal results from a judgment of the Greene County Court of Common Pleas wherein judgment was granted in favor of defendants-appellees, M & H Tire Company (hereinafter "M & H") et al., and against plaintiff-appellant, Irving Leasing Corporation (hereinafter "Irving"). Irving has appealed this determination to our court.

Irving is a corporation engaged in the business of financing and leasing personal property. Specifically, Irving purchases equipment and then leases it. Appellee M & H is a corporation which is in the business of selling and retreading tires. Appellee Thomas G. Meehan is the president of M & H.

In 1979, M & H entered into negotiations with Poly-Quip, Inc., a manufacturer of tire-recapping equipment, concerning the purchase of certain tire-recapping equipment referred to as "mules." In September 1979, Poly-Quip, Inc. delivered these mules to M & H's shop in Xenia, Ohio.

On October 17, 1979, M & H, by its president Thomas G. Meehan, signed a lease agreement for the mules which referred to Poly-Quip, Inc. as the vendor, M & H as the lessee and Irving as the lessor. The lease agreement called for Irving to purchase the equipment selected by M & H for lease to M & H. In addition, the lease provided that M & H was to make sixty monthly payments of $627.99 to the lessor, Irving. The lease also stated that title to the equipment at all times remained in the lessor and that, upon expiration or default of the lease, lessor immediately became entitled to possession of the equipment.

M & H made twelve monthly payments to Irving pursuant to the lease agreement and then stopped all payments. M & H stopped making payments for the stated reason that the equipment did not work and that it had not, in fact, ever worked. The testimony reveals that Poly-Quip, Inc., the manu-

facturer of the equipment, repeatedly attempted to correct the problems M & H was experiencing with the equipment in question, but failed to ever fully correct all the problems.

When it became clear to M & H that the equipment was not repairable, M & H contacted Poly-Quip, Inc. and requested they remove the equipment from its premises. Poly-Quip, Inc., upon receiving authority from Irving, picked up the equipment and subsequently resold it for $9,000.

On December 3, 1981, Irving filed a complaint in the Greene County Court of Common Pleas alleging that M & H was in default of its lease agreement with Irving. As a result of this default, Irving demanded payment in the amount of $21,143.52, said amount still owing under the lease agreement.

In its judgment entry filed September 23, 1982, the trial court granted judgment in favor of defendant M & H et al. This decision was based upon the trial court's finding that the lease between M & H and Irving had an implied requirement that all items leased would properly function and perform. Because the equipment did not properly function, the trial court determined M & H owed nothing to Irving. Irving has appealed this determination.

Irving brings before this court two assignments of error, the first of which is separated into five subsections. Subsection (A) of Irving's first assignment of error provides:

"The lease entered into by Irving Leasing Corporation and M & H Tire Company was a bona fide or 'true' lease."

Irving contends that the lease agreement entered into between M & H and Irving was a true lease and not a conditional sales contract or a lease intended as security. The significance of the determination that a lease is a true lease lies in the fact that Articles 2 (R.C. Chapter 1302) and 9 (R.C. Chapter 1309) of the Uniform Commercial Code are not directly applicable to a true lease, whereas a lease that is in reality a conditional sales contract or a lease intended as security does fall directly within the parameters of Articles 2 and 9 of the Uniform Commercial Code. See R.C. 1301.01(KK).

In its judgment entry, the trial court determined that the agreement between M & H and Irving was a true lease. M & H does not disagree with this finding. Therefore, Subsection (A) of Irving's first assignment of error is without merit.

Subsection (B) of Irving's first assignment of error provides:

"There was no failure of consideration on the part of Irving Leasing Corporation in this lease transaction."

One of the defenses raised at trial by M & H et al. was a failure of consideration on the part of Irving in the lease agreement. It is M & H's assertion that because the equipment leased from Irving never properly performed, Irving failed to provide consideration under the lease agreement. Although courts generally do not inquire into the adequacy of consideration, the existence of consideration is a proper question. See, generally, 17 Ohio Jurisprudence 3d (1980) 512, Contracts, Section 79.

In order to determine whether Irving failed to provide consideration under the lease agreement, it is necessary to examine the lease itself to determine what Irving promised to do or to refrain from doing in exchange for M & H's performance under the lease. According to the lease agreement, Irving as lessor agreed to purchase the equipment in issue from the vendor, Poly-Quip, Inc., and lease it to the lessee, M & H. In exchange for this purchase and subsequent lease, M & H agreed to lease the equipment from Irving and pay Irving a specific monthly payment for a set period of time.

The evidence reveals that Irving did

in fact purchase the equipment in issue and subsequently lease it to M & H. Accordingly, there was no failure of consideration on the part of Irving because, as lessor, Irving performed all it agreed to do pursuant to the lease agreement. Accordingly, Subsection (B) of Irving's first assignment of error is well-taken.

Subsections (C) and (D) of the first assignment of error read:

"(C) There were no warranties, either express or implied, given by Irving Leasing Corporation to M & H in this lease transaction.

"(D) Irving Leasing Corporation expressly and conspicuously disclaimed any warranties in the lease."

In its decision and judgment entry, the trial court determined that the lease agreement between Irving and M & H contained an implied requirement that all items leased would properly function and perform. The court concluded that the equipment leased by Irving to M & H never properly functioned and that Irving was therefore in breach of the above-mentioned implied warranty. Irving, on the other hand, asserts that there were no warranties, either express or implied, given to M & H and that Irving expressly disclaimed any warranties by a disclaimer clause printed in bold type in the lease agreement.

As indicated under the discussion concerning Subsection (A) of this assignment of error, the lease involved herein was a true lease. Since a true lease was involved rather than a sale, the warranty provisions of Article 2 (R.C. Chapter 1302) of the Uniform Commercial Code are not directly applicable. Although the drafters of the Commercial Code have not expressly excluded leases from Article 2, they have nevertheless limited to sales transactions many of the significant sections of Article 2, including the warranty provisions. See, generally, 1 West's Ohio Practice, Tabac, Commercial and Consumer Law (1981) 27, 28 at fn. 11, Section 24.

Although Article 2 of the Uniform Commercial Code is not directly applicable to a true lease, many courts have applied the sales warranty provisions by analogy, if appropriate under the circumstances. See Annotation (1973), 48 A.L.R. 3d 668. Generally, however, the regulation of leases falls outside the Uniform Commercial Code.

Entirely apart from the Uniform Commercial Code, it is generally held that, in the absence of an agreement to the contrary, a lessor of a chattel, to be used by the lessee for a particular purpose known to the lessor, impliedly warrants the fitness of the chattel leased for its intended use. See 8 American Jurisprudence 2d (1980) 889, Bailments, Section 157. This implied warranty of fitness is recognized under Ohio law. See *Thomson Spot Welder Co.* v. *Dickelman Mfg. Co.* (1921), 15 Ohio App. 270; *Price Boiler & Welding Co.* v. *Gordon* (E.D. Mich. 1956), 138 F. Supp. 43.

Although a lessor generally impliedly warrants the fitness of the chattel leased for its intended use, such warranty may be disclaimed by the contract between the parties provided the disclaimer is not unconscionable. In the present case, the lease agreement conspicuously disclaims any express or implied warranties as to the equipment leased including the warranty of suitability for its intended use. Appellee Thomas G. Meehan signed the lease agreement and testified that he had read the lease agreement prior to signing. The disclaimer provision, located at the top of the second page of the lease, states in bold type:

"No Warranties. Lessee acknowledges that it has selected the type, quantity and vendor of the equipment referred to herein and that it has requested lessor to purchase the same for leasing to lessee. [Lessee] [a]grees that the equipment and each part or unit thereof is of a design, size, quality and capacity required by lessee and is

suitable for its purposes. Lessee further agrees that lessor has not made and does not hereby make any representation, warranty or covenant, expressed or implied, with respect to the condition, quality, durability, capability or suitability of equipment or against any patent or latent defects therein, and lessee specifically waives any claim against lessor for any liability, claim, loss, damage or expense of any kind or nature caused directly or indirectly by the equipment or the inadequacy thereof for any purpose or for any deficiency or defect therein or for any repairs, servicing or adjustments thereto or for any loss of business or for any damage whatsoever or howsoever caused."

This provision makes it clear that Irving was in effect a middleman wherein it provided a service to both the manufacturer and the buyer. Irving purchased the equipment selected by M & H from Poly-Quip, Inc. and then leased the equipment to M & H.

We find nothing unconscionable in recognizing the right of a financing lessor-vendee to disclaim warranties to equipment in which it had no active dealings in the selection or manufacture of the leased equipment, so long as the lessor-vendee effectively assigns to the lessee all warranties expressed or implied in the equipment leased, in this case the "mules," given by the manufacturer-vendor, in this case Poly-Quip, Inc., to the lessor-vendee. See *Konicki* v. *Salvaco, Inc.* (1984), 16 Ohio App. 3d 40. However, if the total lease agreement leaves the lessee with equipment that does not work and with virtually no recourse against the persons with whom he has dealt (in this case, the manufacturer-vendor and the lessor-vendee), such a lease and disclaimer may be unconscionable.

According to the lease agreement, Irving disclaimed all warranties, express and implied, and assumed no responsibility for the performance or maintenance of the equipment in issue.

In the lease agreement, Irving did not assign to M & H its rights as vendee of the equipment against the manufacturer-vendor for breach of warranty; thus, in the event the equipment is found to be defective, as it was in this case, the lease agreement leaves the lessee without recourse against either the lessor or the manufacturer for breach of warranty.

It is our determination that such an inequitable result raises the issue of unconscionability of the lease agreement. Unconscionability arises from the inequity of compelling payment for equipment that cannot be used without the right to interpose a defense or set off on the part of the lessee. The lessee in this situation is left without any recourse against either the lessor or the manufacturer for receiving defective machinery. Although we recognize that a lessor may disclaim all warranties in the leased goods, he may not leave the lessee with defective machinery and with no avenue for recourse against the manufacturer.

R.C. 1302.15(B) (UCC 2-302[2]) provides that where "* * * it is claimed or appears to the court that the contract or any clause thereof may be unconscionable[,] the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." While R.C. 1302.15 is contained in the sales portion of the Commercial Code, we find it appropriate in the situation before us. Accordingly, a remand is necessary to determine the issue of unconscionability in this case.

Appellees have also raised the issue of an alleged agency relationship between Poly-Quip, Inc., the manufacturer of the equipment in issue, and Irving. Appellees assert that Poly-Quip, Inc. was an agent of Irving and as such Irving is bound by the representations and/or warranties made by Poly-Quip's representatives.

An agency relationship is normally a

contractural relation created by an express or implied agreement between the parties; however, agency may also be conferred if the principal, intentionally or by lack of ordinary care, causes or allows third persons to act upon the apparent agency relationship. In order to establish such an agency, it must be shown that the principal held the agent out to the public as possessing sufficient authority to act on his behalf and that the person dealing with the agent knew these facts and, acting in good faith, had reason to believe the agent possessed the necessary authority. *Logsdon* v. *AB-CO Constr. Co.* (1956), 103 Ohio App. 233, 241-243 [3 O.O.2d 289]. The burden of proving such agency exists rests upon the party asserting the agency.

The facts of the present case do not support a finding that Poly-Quip, Inc. was an agent for Irving with authority to make representations and/or warranties on Irving's behalf. The lease itself, signed by appellee Thomas G. Meehan, states that no warranties were given by or on behalf of Irving concerning the equipment in issue. In addition, the lease specifically refers to Irving and Poly-Quip, Inc. as separate entities, one being a lessor and the other being a vendor. Nowhere in the lease agreement is Poly-Quip, Inc. referred to as an agent or employee of Irving. Thomas G. Meehan, president of M & H, testified that it was his understanding that Poly-Quip, Inc. and Irving were two separate companies and that Irving did not make any representations that Poly-Quip, Inc. was an agent of Irving. Although Poly-Quip, Inc. did install the equipment in issue and work with M & H in attempting to repair the equipment, no evidence was presented to support a finding that Irving intentionally or negligently held Poly-Quip, Inc. out as its agent.

Subsections (C) and (D) of Irving's first assignment of error are well-taken.

The last subsection (Subsection [E]) of Irving's first assignment of error reads:

"Irving Leasing Corporation otherwise performed all provisions of said lease."

In accordance with the lease agreement, Irving, as lessor, agreed to purchase equipment selected by the lessee, M & H, and to lease this equipment back to the lessee in exchange for the lessee making a lease payment each month for sixty months. Since this is a true lease, the rights and obligations of the parties are determined by the lease agreement. There is no evidence that Irving did not perform the above-mentioned obligations under the lease agreement. Therefore, we conclude Irving did perform all obligations agreed to under the lease agreement.

Appellees have also raised the issue of Irving's duty to mitigate its damages upon default. Paragraph ten of the lease agreement provides that, in the event of default, lessor shall have the option of either abandoning the equipment or taking possession. Upon gaining possession of the equipment, lessor must seek, in good faith, to sell or re-lease the equipment and deduct the net proceeds from the sale or subsequent lease from lessee's obligation. Upon default, lessee becomes obligated for the entire unpaid balance of the aggregate rent due under the lease agreement.

In the present case, M & H made approximately twelve monthly payments on the equipment before stopping payment and asking that the equipment be returned. Poly-Quip, Inc., upon authority from Irving, picked up the equipment and subsequently resold it for $9,000. There is no evidence in the record that this price was lower than the fair market value of the equipment at the time of sale or that Irving acted in bad faith by selling the equipment through the manufacturer, Poly-Quip, Inc., for the above-mentioned price. Accordingly, Subsection (E) of Irving's first assignment of error is well-taken.

In its second assignment of error, Irving alleges:

"The trial court erred in granting judgment to the defendants on the basis of an implied requirement of items leased to properly function and perform and that the leased equipment did not properly work, for the reason that defendants were barred by the doctrine of waiver and estoppel from asserting such claims."

It is Irving's contention that M & H made certain assurances that were relied upon by Irving and induced it to approve the lease agreement. Specifically, Irving alleges that M & H, after using the equipment in issue for approximately sixty days, signed the lease agreement and a delivery-acceptance receipt, both of which state that the equipment in issue is in good condition and suitable for lessee's purposes. Based on these representations, Irving submits it purchased the equipment in issue and entered into the lease agreement with M & H.

Under the discussion relative to the first assignment of error, it was our determination that the lease agreement, as written, raises the issue of unconscionability of the contract. Based on this finding, we cannot conclude that M & H, by signing this lease agreement, was estopped and waived its claim that the equipment as delivered was defective and never properly functioned. If the trial court determines the lease agreement as written is not unconscionable under the circumstances, the issue of the applicability of waiver and estoppel would then become an appropriate issue for the court to determine. Accordingly, the second assignment of error is denied.

The judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

BROGAN, P.J., and WILSON, J., concur.