OPINION
Plaintiffs-appellants, Patrick Doherty ("Doherty") and RGB Joint Ventures ("RGB") (collectively "appellants"), appeal from the June 13, 2000 judgment of the Franklin County Court of Common Pleas adopting, as modified, the February 7, 2000 magistrate's decision and entering judgment in favor of defendant-appellee, Developer's Mortgage Company ("DMC"). The trial court found that Doherty's partner, Roger Murphy, had no implied or express authority to authorize DMC to divert money from Doherty and Murphy's joint venture to pay Murphy's unrelated debts. However, the trial court found that DMC had established the affirmative defense of apparent agency and, therefore, entered judgment in favor of DMC. For the reasons that follow, we affirm.
Doherty and Roger Murphy, both of whom were in the construction business, formed RGB Venture to acquire, rehabilitate, develop, own and sell parcels of real estate, and to construct and market single family residences on the real estate.[1] (Joint Venture Agreement 5.1 and 5.2.) RGB obtained construction loans from DMC. As construction progressed, RGB took draws against the loan amounts.
Doherty and Murphy also obtained construction lending from DMC for projects that did not relate to RGB. In particular, Murphy obtained construction lending from DMC for an entity known as Braet Builders, an entity with no relation to appellant or RGB.
According to the testimony of three witnesses, DMC president Michael Lerch, DMC employee Tamara Cannon, and Roger Murphy, all of RGB's loans were cross-collateralized with the other RGB loans and with all loans taken out by appellant individually, Murphy individually, and any entity in which appellant or Murphy had an ownership interest. Thus, if any one loan were to go into default, all of the loans would be in default. (Tr. 92, 111, 129.) According to Doherty's testimony, only RGB loans were cross-collateralized with each other.
The only documentary evidence of cross-collateralization submitted at trial is a reference in a mortgage note in the amount of $133,500 dated January 20, 1995. In the first paragraph of the note, only RGB Venture, an Ohio Joint Venture, is named as the "Maker," and DMC is named as the "Payee." However, Roger Murphy and Doherty each signed the note twice, once as a joint venturer, and once individually. Article V of the note, entitled "Default" states, in pertinent part:
5.01 The term "Event of Default" shall mean:
* * *
 An occurrence of any event or condition which results in a default in the payment of any other indebtedness or the performance of any obligation of any or more of the Makers to Payee.
Because RGB is the only maker on the note, the provision appears to support appellant's position that only RGB loans were cross-collateralized.
Murphy fell behind on his individual and Braet Builders loan obligations to DMC. On four occasions, Murphy authorized DMC to withhold funds from RGB draws to pay the past due obligations of Murphy and/or Braet Builders. On one occasion, Murphy authorized DMC to apply $10,082.97 from a DMC loan to Murphy to pay past-due interest on a DMC construction loan to RGB. The net detriment to RGB from the transactions totaled $22,406.06. The joint venture agreement did not permit Murphy to authorize the five transactions. Doherty did not authorize or ratify any of the five transactions.
Murphy and Doherty eventually had a falling out and, on November 30, 1995, Doherty and Murphy entered into an "Agreement for the Acquisition of Interest in Joint Venture," whereby Doherty acquired all of Murphy's interest in RGB. Doherty and RGB initiated this lawsuit against DMC for the return of the $22,406.06.
The matter was referred to a magistrate for a jury-waived trial. On February 7, 2000, the magistrate filed a decision on the merits. Appellants filed objections to the magistrate's decision. On June 13, 2000, the trial court issued a decision adopting, as modified, the magistrate's February 7, 2000 decision.
The trial court applied partnership law to the joint venture and found that Murphy had no express or implied authority to divert money from RGB to pay the unrelated debts of Braet Builders. Therefore, in the absence of any substitute for Murphy's authority, the trial court found that DMC would be liable to RGB for any payments that were unrelated to the partnership interests. The trial court then found that DMC had established the affirmative defense of apparent agency and entered judgment in favor of DMC.
On appeal, appellants set forth the following five assignments of error:
 I. The trial court erred in failing to follow Ohio precedent establishing that a creditor may not properly rely upon the representations of one partner to apply partnership funds to non-partnership debts owed to that creditor without first notifying or obtaining the approval of the other partner.
 II. The trial court erred by concluding that payment of one partner's separate, non-partnership debts with partnership funds constitutes action that is apparently for the carrying out of the business purpose of the partnership.
 III. The trial court erred by holding that an apparent agency existed based solely upon representations of the putative agent.
 IV. The trial court erred by disregarding the manifest weight of the evidence and concluding that the RGB loans at issue were cross-collateralized with non-RGB loans.
 V. The trial court erred by disregarding the manifest weight of the evidence and concluding that RGB benefited from the diversion of RGB funds to pay non-RGB debts owed by Roger Murphy.
The assignments of error are interrelated and will be discussed together.
Appellants contend that, in order for apparent agency to exist, the evidence must show that the principal held the agent out as possessing sufficient authority to bind the principal. Appellants argue that the trial court, while paying lip service to this concept, relied only on statements made by Murphy, the putative agent, and that an agent cannot establish an apparent agency for himself.
We agree with appellants that the trial court did not cite to any testimony other than that of Murphy to establish that appellant knowingly permitted Murphy to act as having sufficient authority to authorize DMC to execute the five transactions. However, based upon our own review of the record, we find that the trial court's failure to cite other evidence is not prejudicial to appellants. Where a judgment is correct, a reviewing court is not authorized to reverse such a judgment merely because erroneous reasons were assigned as the basis for the judgment. An appellate court must affirm the judgment if it is legally correct on other grounds, i.e., it achieves the right result for the wrong reason, because such an error is not prejudicial. Oglesby v. City of Columbus (Feb. 8, 2001), Franklin App. No. 00AP-544, unreported; Gunsorek v. Pingue (1999), 135 Ohio App.3d 695, 701.
An agency relationship may be conferred if the principal, intentionally or by lack of ordinary care, causes or allows third persons to act upon the apparent agency relationship. Irving Leasing Corp. v. M H Tire Co. (1984), 16 Ohio App.3d 191, 195. To establish liability premised upon apparent agency, a third party must show that: (1) the principal made representations leading the third party to reasonably believe that the wrongdoer was operating as an agent under the principal's authority; and (2) the third party was thereby induced to rely upon the ostensible agency relationship to his detriment. Shaffer v. Maier (1994),68 Ohio St.3d 416, 418. The burden of proving that an apparent agency exists rests upon the party asserting the agency, in this case, DMC. See Irving Leasing Corp., supra, at 195.
In this case, Doherty testified that he was aware that Murphy dealt with Tamara Cannon and others from DMC on a regular basis and that appellant did not know what Murphy authorized or didn't authorize. (Tr. 51.) Doherty was aware that Murphy was "loosey goosey" in handling finances. (Tr. 63.) Doherty was notified by John Bain and Tamara Cannon of DMC that Murphy was behind in his interest bills on RGB properties. (Tr. 63, 64, 72.) As a result, Doherty then requested and received copies of the monthly invoices that were sent to Murphy, and Doherty promised to talk to Murphy. (Tr. 63, 64, 72.) DMC notified Doherty that if Murphy got behind on payments for RGB properties, then Doherty was responsible for making those payments because Doherty's name was on the construction loan. (Tr. 64.) However, Doherty stated "they didn't say I had to pay Braet Builders and Roger Murphy's interest. That never came up." (Tr. 64.) Doherty was aware that Murphy was behind, not only on interest bills, but behind with respect to payments with subcontractors. (Tr. 66.)
Doherty testified that before any of the transactions at issue in this case took place, he had concerns that Murphy was not using the funds as he should. (Tr. 67.) Doherty also testified that, before any of the transactions at issue in the present case took place, Doherty told Tamara Cannon that if there was any misuse of funds "other than for RGB products," that he wanted to know about it. (Tr. 66.) Doherty did not check to see how Murphy applied the draws that he received for RGB properties as to each subcontractor. (Tr. 65.) However, Doherty did testify that every time he "got wind that there was a problem with money being disbursed and how it was used," he did check to see how the draws were being applied. (Tr. 65.) Doherty testified that he did not know that funds were being withheld from RGB draws until Murphy told him. (Tr. 67.) According to Doherty, at some point, Murphy told Doherty that money was being taken from RGB to pay Murphy's personal bills, and he [Murphy] was going to look into it. (Tr. 65.) Doherty testified that Murphy did not look into it, but Doherty did, and that "was the first time that I knew that money was being diverted." (Tr. 65.)
Based on Doherty's own testimony, we find that there was sufficient evidence that, prior to the transactions at issue here, Doherty knew there were problems with the way Murphy handled RGB finances. Significantly, Doherty told Tamara Cannon of DMC that he wanted to be informed if there was any misuse of funds, but there is no testimony that Doherty indicated in any way that DMC was not to comply with any of Murphy's orders. Thus, either intentionally, or by a lack of ordinary care, Doherty then allowed DMC to act upon the apparent agency relationship created by Murphy.
Additionally, there was testimonial evidence that RGB loans were cross collateralized with Murphy's individual loans and Braet Builders loans, and that a default on one loan was a default on all loans. Therefore, DMC's reliance on Murphy's authorization was not unreasonable as the diversion of funds was at least arguably for the benefit of the partnership.
Accordingly, the trial court did not err when it found that DMC carried its burden as to the affirmative defense of apparent agency by a preponderance of the evidence. Based on the foregoing, appellants' five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ______________________ LAZARUS, J.
DESHLER, J., concurs, BRYANT , P.J., dissents.
[1] Homes were to be constructed in three different areas, Riverlea, Grandview, and Bexley; hence "RGB."