OPINION
{¶ 1} Plaintiffs-appellants, Michael and Lisa Akers, appeal a decision of the Warren County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Classic Properties, Inc.
 {¶ 2} On April 22, 2002, appellants filed a complaint against Classic Properties alleging breach of promise, intentional misrepresentation, fraudulent inducement, and violation of the Interstate Land Sales Full Disclosure Act in connection with appellants' purchase of a lot and house in a residential subdivision known as Hunters Green in Mason, Ohio. Specifically, appellants complained that Classic Properties, through its agents, promotional material, and newspaper articles, induced them and other buyers to purchase a lot and house in the subdivision by promising amenities which were never provided. For example, appellants assert that instead of the promised bike and walking trails, the subdivision only has wide sidewalks.
 {¶ 3} Hunters Green, LLC, ("Hunters Green") an Ohio limited liability company owned by Classic Properties and William Ryan Homes, Inc., was formed to acquire the land for, and develop the Hunters Green subdivision. Classic Properties is the managing member of Hunters Green. Ryan Homes does business as Williamsburg Homes. Upon developing the subdivision, Hunters Green sold the residential lots to several independent home builders, including Williamsburg Homes. The builders, in turn, constructed houses and sold the lots.
 {¶ 4} Several months before appellants purchased a lot in the subdivision, Classic Properties and Hunters Green prepared a brochure and a site plan depicting the amenities which Hunters Green intended to construct in the subdivision. The brochure describes the subdivision as an "elite address for upscale living," lists bike and walking trails as amenities, and states that the subdivision is a development of Classic Properties. The brochure and site plan were given to the builders, including Williamsburg Homes, with the understanding that they would be used by the builders as a marketing tool. Aside from preparing the brochure and distributing it, Classic Properties engaged in no other effort to market the subdivision. Classic Properties placed no newspaper, television, or radio advertisements.
 {¶ 5} Like the other builders, Williamsburg Homes purchased several lots in the subdivision. On October 10, 1998, appellants entered into a contract with Williamsburg Homes to purchase a lot and to have a house built by Williamsburg Homes. Until they closed on their property in April 1999, appellants had absolutely no contact with Classic Properties. Rather, their only contacts were with Bob Reynolds whom they had met at a Williamsburg Homes model home. Appellants understood that Reynolds was a salesman for Williamsburg Homes. According to appellants, however, Reynolds represented to them that he was also representing Classic Properties. Reynolds also made several misrepresentations as to the amenities to be built in the subdivision. Appellants claim that Reynolds' misrepresentations induced them to choose Hunters Green subdivision over other subdivisions in the area and to sign the contract with Williamsburg Homes. Appellants never sought to review the site plan for the subdivision before signing the contract with Williamsburg Homes.
 {¶ 6} As the development of the subdivision was completed, it became clear that the promised amenities were not going to be provided. Appellants contacted Classic Properties which told them to contact their builder. Claiming that they had suffered damages from the failure to provide some of the promised amenities, appellants filed a complaint against Classic Properties "individually and on behalf of other, similarly situated and duped subdivision residents." Neither Williamsburg Homes nor Hunters Green were joined as defendants. Classic Properties moved for summary judgment.
 {¶ 7} By decision filed on February 5, 2003, the trial court granted summary judgment in favor of Classic Properties, stating: "[Appellants] claim that they relied on [the brochure and site plan] and that they were misleading in that not all of the amenities have been provided. [Appellants] further claim that an agent or employee of Williamsburg Homes made oral misrepresentations of similar nature.
 {¶ 8} "As to these oral misrepresentations, we find that there is no evidence to show that the agent or employee of Williamsburg Homes was an agent of [Classic Properties], or that he was expressly or impliedly authorized to make any representation on behalf of [Classic Properties.] [Classic Properties] cannot be held liable for these representations.
 {¶ 9} "As to the brochure and site plan map, there is no evidence that the amenities that were described in these materials were not provided, with the possible exception of the `bike and walking trails.' * * *
 {¶ 10} "We also find that [appellants'] claim based on15 U.S.C. § 1701 et seq. (the Land Sales Disclosure Act) is time-barred. Furthermore, the Land Sales Disclosure Act does not apply to the sale of an already improved lot, as is the case here." On appeal, appellants raise three assignments of error.
 {¶ 11} In their first assignment of error, appellants argue that the trial court erred by granting summary judgment in favor of Classic Properties. Appellants assert that by distributing the brochure to the builders, Classic Properties created an agency relationship with the builders, making Classic Properties liable for the representations of the salesmen and builders "whom it clothed with apparent authority to market and sell homes in the subdivision." Appellants also assert that Classic Properties, through its brochure and newspaper articles, directly made representations to them regarding the bike and walking trails.
 {¶ 12} Civ.R. 56(C) provides in part that summary judgment shall be rendered where (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66.
 {¶ 13} An appellate court's standard of review on appeal from a summary judgment is de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294,296. An appellate court reviews a trial court's disposition of a summary judgment independently and without deference to the trial court's judgment. Id. In reviewing a summary judgment disposition, an appellate court applies the same standard as that applied by the trial court.Midwest Ford, Inc. v. C.T. Taylor Co. (1997), 118 Ohio App.3d 798, 800.
 {¶ 14} Appellants' claim is premised upon the theory of apparent agency. The burden of proving the existence of an apparent agency rests upon the party asserting the agency. Irving Leasing Corp. v. M HTire Co. (1984), 16 Ohio App.3d 191, 195. "To establish liability premised upon apparent agency, a plaintiff must show that (1) the defendant made representations leading the plaintiff to reasonably believe the wrongdoer was operating as an agent under the defendant's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship to his detriment." Shaffer v. Maier,68 Ohio St.3d 416, 418, 1994-Ohio-134. The principal must hold out the agent as possessing sufficient authority to embrace the particular act in question, or knowingly permit him to act as having such authority. MasterConsol. Corp. v. BancOhio Natl. Bank (1991), 61 Ohio St.3d 570, 576. "The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of the agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority." Logsdon v. ABCO Constr. Co. (1956), 103 Ohio App. 233,242.
 {¶ 15} The evidence shows that Classic Properties is a member/owner of Hunters Green as well as its manager. Ryan Homes is the other member of Hunters Green and does business as Williamsburg Homes. Joseph Farruggia, the president and sole shareholder of Classic Properties, testified that (1) he is not on the board of either Ryan Homes or Williamsburg Homes; (2) Williamsburg Homes is a building company separate from Hunters Green; (3) all the builders, including Williamsburg Homes, paid full price to buy lots in the subdivision; and (4) neither Classic Properties nor Hunters Green own any interest in or control the builders.
 {¶ 16} Classic Properties and Hunters Green prepared a brochure and a site plan depicting the amenities which Hunters Green intended to construct in the subdivision. These materials were given to the builders, including Williamsburg Homes, with the understanding that they would be used by the builders as a marketing tool. Aside from preparing the brochure and distributing it, Classic Properties engaged in no other effort to market the subdivision. Classic Properties placed no newspaper, television, or radio advertisements. Farruggia testified that Classic Properties (1) had no power over the builders' own promotional materials; (2) had no control over what builders told buyers; and (3) only controlled what was put in the brochure distributed to the builders.
 {¶ 17} Appellants had no contact with Classic Properties until after the closing on their property. Appellants testified that oral misrepresentations about amenities were made by Reynolds, who while a Williamsburg Homes' salesman, also claimed to represent Classic Properties. No one else claimed to represent Classic Properties. Plaintiff-appellant, Michael Akers, testified that Reynolds was "working for Williamsburg Homes, which works for ___ in my opinion, * * * Classic Properties. Classic Properties provides them the business. They have a relationship." Plaintiff-appellant, Lisa Akers, claimed that "everything that was represented in that community ultimately came from Classic Properties, because they define what * * * the community amenities are going to be."
 {¶ 18} Appellants further testified that misrepresentations about amenities were also made on signs throughout the subdivision and in newspaper articles and radio advertisements. Lisa Akers, however, admitted that signs displayed throughout the subdivision did not have Classic Properties' name on them and that she did not know who had put up the signs. Newspaper articles attached to appellants' complaint do not mention Classic Properties; rather, they direct readers to contact Reynolds and/or Williamsburg Homes. Appellants testified they did not know if the radio advertisements were from Classic Properties.
 {¶ 19} With regard to representations made by Reynolds and/or Williamsburg Homes, Farruggia testified that (1) he believed Reynolds was an employee of Williamsburg Homes; (2) he did not know about Reynolds' oral misrepresentations and Williamsburg Homes' representations in newspaper articles until after the lawsuit was filed; (3) he has never misrepresented to either Williamsburg Homes or Reynolds the amenities intended to be built; and (4) he has never authorized any representative from Classic Properties to meet with prospective buyers. Farruggia's affidavit states in relevant part that "[1] [n]either Classic nor Hunters Green LLC constructed any single family homes for resale in the Subdivision; [2] [n]either Classic nor Hunters Green LLC controls the Home Builders or their employees; [3] [a]t no time has either Classic or Hunters Green LLC employed or otherwise engaged Bob Reynolds to act as agent in connection with the sale of lots or homes at the Subdivision or for any other purpose; and [4] [a]t no time has Classic or Hunters Green LLC requested or instructed the Home Builders, Williamsburg or Mr. Reynolds to misrepresent the nature of the amenities which Hunters Green LLC intended to construct at the Subdivision."
 {¶ 20} The facts in the present case do not support a finding that Reynolds or Williamsburg Homes were agents for Classic Properties with authority to make representations on behalf of Classic Properties. No evidence was presented to support a finding that Classic Properties by its acts or conduct held out Reynolds or Williamsburg Homes as its agents, or knowingly permitted them to act as having such authority. As there was no agency relationship, apparent or otherwise, the trial court properly found that Classic Properties could not be held liable for Reynolds' and/or Williamsburg Homes' representations.
 {¶ 21} With regard to appellants' claim that Classic Properties, through its brochure and newspaper articles, directly made misrepresentations to them about the bike and walking trails, we first note that misrepresentations, if any, were only made in the brochure, as Classic Properties engaged in no other promotion to market the subdivision. Farruggia testified that (1) a company hired to create the brochure came up with the language used in the brochure; (2) he and Classic Properties approved the brochure; (3) sidewalks are the same as bike and walking trails; and (4) the terms "bike and walking trails" sound better than sidewalks. Appellants agreed that one could walk and ride a bike on the four-foot wide sidewalks built in the subdivision.
 {¶ 22} The trial court found that "[t]he promotional materials provided by Hunters Green LLC and [Classic Properties] refer to `bike and walking trails.' What has been actually constructed are four-foot wide concrete sidewalks. There is no evidence that [appellants] were ever given a more detailed or specific description of what was intended by Hunters Green LLC or by [Classic Properties]. To say that the concrete sidewalks that were provided do not meet the definition of `bike and walking trails' or that they are not what the parties mutually intended by the use of that phrase, would require the Court, without some evidence, to engage in sheer speculation and conjecture." We agree with the trial court.
 {¶ 23} We add that the brochure is clearly a glossy promotional and marketing tool using boastful and exaggerated language to promote the subdivision. For example, the brochure also lists as amenities "spacious green area for lawn parties," "lake areas with fountains." The brochure refers to the subdivision as "an elite address for upscale living" and describes a club house amenity as "shaded verandahs, spacious party facilities, lawn fetes, impeccable landscaping. It could be the hub of an exclusive country club. It is a very special place for your use, pleasure and enjoyment — an amenity in perfect harmony with an elite address." These terms along with the terms "bike and walking trails" are nothing more than puffing and not warranties. Thus, they do not provide a basis to reverse the granting of summary judgment to Classic Properties. See Chic Promotion, Inc. v. Middletown Sec. Sys., Inc. (1996),116 Ohio App.3d 363; Diamond Co. v. Gentry Acquisition Corp., Inc. (C.P. 1988), 48 Ohio Misc.2d 1. Appellants' first assignment of error is overruled.
 {¶ 24} In their second assignment of error, appellants argue that the trial court erred by finding that their claim under the Interstate Land Sales Full Disclosure Act ("ILSFDA") was time-barred and that ILSFDA was inapplicable.
 {¶ 25} ILSFDA is "an antifraud statute utilizing disclosure as its primary tool, much like the securities laws." Winter v. HollingsworthProperties, Inc. (C.A. 11, 1985), 777 F.2d 1444, 1447. ILSFDA imposes detailed disclosure requirements upon land developers to ensure full disclosure to buyers of relevant facts prior to their decision to purchase real estate. Pierce v. Apple Valley, Inc. (S.D.Ohio 1984),597 F. Supp. 1480, 1484. For purposes of ILSFDA, a sale occurs when the purchaser signs the sale agreement and incurs an obligation. Markowitz v.Northeast Land Co. (C.A. 3, 1990), 906 F.2d 100, 104.
 {¶ 26} In the proceedings below, appellants claimed that Classic Properties violated Section 1703(a)(2) of ILSFDA. That provision states in relevant part that with respect to the sale of any lot not exempt under Section 1702(a), it is unlawful for any developer or agent, directly or indirectly, "(A) to employ any device, scheme, or artifice to defraud; (B) to obtain money or property by means of any untrue statement of a material fact * * *; (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser[.] * * *" Pursuant to Section 1711(a)(2), a three-year limitations period applies to actions brought under Section 1703(a)(2)(A)-(C). The limitations period begins to run from the date of discovery of the violation, or the date on which discovery should have been made by the exercise of reasonable diligence.
 {¶ 27} The trial court found that appellants' claim was time-barred and that ILSFDA was inapplicable "to the sale of an already improved lot, as is the case here." The trial court's decision was based upon Section 1702(a)(2) which provides that ILSFDA does not apply to "the sale * * * of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale * * * of land under a contract obligating the seller * * * to erect such building thereon within a period of two years[.]"
 {¶ 28} For a real estate sale to be exempted under Section 1702(a)(2), the seller must clearly sell a lot with an existing building or must be obligated to erect such building within two years from the sale. "If at the time the purchaser signs the contract there exists a * * * building or the seller is obligated to erect such building within two years, the sale is exempt from the Act. If, as in this case, no building exists at the time of contracting and the contract does not contain a binding obligation to complete one within two years, compliance with the statute is required." Winter, 777 F.2d at 1450. The record shows that at the time appellants signed the sale contract with Williamsburg Homes, there was no building on the lot they were purchasing. Furthermore, the sale contract between appellants and Williamsburg Homes did not require the builder to erect a building within two years from the sale. We therefore find that the trial court erred by finding that ILSFDA was inapplicable under Section 1702(a)(2).
 {¶ 29} Nevertheless, we do not reach the issue of whether appellants' claim under ILSFDA was time-barred as we find that ILSFDA was inapplicable under Section 1702(a)(7). This provision provides that ILSFDA does not apply to "the sale * * * of lots to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial, or industrial building or for the purpose of resale * * * of such lots to persons engaged in such business[.]"
 {¶ 30} To qualify for ILSFDA protection, a plaintiff must be able to show that he purchased the lot from a defendant who is a developer or a developer's agent. See Gibbes v. Rose Hil Plantation Dev. Co. (D.S.C. 1992), 794 F. Supp. 1327, 1333. Section 1701(6) defines a developer's agent as "any person who represents, or acts for or on behalf of, a developer in selling * * * any lots or lots in a subdivision * * *." In the case at bar, it is undisputed that Classic Properties, the developer of the subdivision, sold lots to Williamsburg Homes, a builder and non-party, which in turn, directly sold a lot to appellants. It is undisputed that there was no transaction between appellants and Classic Properties. As a result, appellants have no claim against Classic Properties unless they can demonstrate that Williamsburg Homes sold lots as Classic Properties' agent. Tomlinson v. Village Oaks Dev. Co., LLC (S.D.Ind. 2003), No. IP-02-0599-C-M/S, 2003 WL 21180644, at *2. In light of our holding under the first assignment of error that neither Reynolds nor Williamsburg Homes were agents of Classic Properties, we find that pursuant to Section 1702(a)(7) of ILSFDA, appellants have no claim against Classic Properties. Id. Appellants' second assignment of error is accordingly overruled.
 {¶ 31} In their third assignment of error, appellants argue that the trial court erred by overruling their motion to certify a class action filed after their complaint and before Classic Properties' summary judgment motion. Appellants correctly assert that by failing to rule on their motion, the trial court implicitly overruled it. See Takas v.Baldwin (1995), 106 Ohio App.3d 196, 209. Given our resolution of the first and second assignments of error, this assignment of error is moot. App.R. 12(A)(1)(c).
Judgment affirmed.
WALSH, P.J., and BROGAN, J., concur.
Hendrickson, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.