**JEFFERSON PLACE CONDOMINIUM ASSOCIATION, Appellee,**

v.

**NAPLES et al., Appellants.**

[Cite as *Jefferson Place Condominium Assn. v. Naples* (1998), 125 Ohio App.3d 394.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

Nos. 95CA238 and 95CA240.

Decided Jan. 22, 1998.

*Lawrence J. Damore* and *Russell Buzzelli,* for appellee.

*John F. Zimmerman, Jr.,* and *Marc E. Dann,* for appellants.

VUKOVICH, Judge.

This is a timely appeal from the trial court's granting of a permanent injunction against condominium owners and/or occupants forbidding the keeping of dogs on the premises in violation of the condominium association declarations and bylaws. For the reasons set forth below, we reverse the judgment of the trial court.

On September 4, 1992, appellant Joan Naples purchased condominium unit No. 221 in the Jefferson Place Condominium development after receiving assurances that she would be able to keep a dog on the premises. Appellant Joan Mamounis, Naples's niece, moved into the unit purchased by Naples. At the time of purchase, Naples signed a document indicating she had received copies of the condominium declarations and bylaws; however, Naples did not actually receive copies of these documents until approximately one week later. Those documents provided that "[n]o animals, livestock or poultry of any kind shall be raised, bred or kept in any unit."

Mamounis received copies of the documents on September 4, the date Naples closed on her unit. Nonetheless, Mamounis moved into the unit with a German shepherd. The attorney for the Jefferson Place Condominium Association subsequently sent Naples and Mamounis several letters requesting that they remove the dog. Mamounis never did.

Appellant Barbara McOwen purchased unit No. 260 at the Jefferson Place Condominiums. She signed the purchase agreement on August 23, 1993, acknowledging receipt of the declarations and moved in on May 12, 1994. McOwen moved into the unit with her dog. The attorney for the condominium association sent notices to McOwen with regard to her keeping a dog on the premises. However, she refused to get rid of her dog.

Therefore, on October 31, 1994, the Jefferson Place Condominium Association, appellee, filed a complaint for a temporary restraining order against Mamounis, Naples, and McOwen for harboring animals in their condominiums in contravention of the association's declarations.

On November 30, 1994, McOwen filed her separate answer, in which she admitted that she owned a dog and kept the dog in her condominium.

On February 17, 1995, Naples and Mamounis filed their answer with a counterclaim and third-party complaint against (1) Jeff Rogner, the agent who sold the unit to Naples and Mamounis; (2) Alex Christoff, a partner in the Jefferson Place Condominiums and its developer; (3) Ronald McGraw, a partner in the Jefferson Place Condominiums; and (4) Agency Real Estate Company, the broker agent for the Jefferson Place Condominiums. On March 8, 1995, Naples and Mamounis voluntarily dismissed the suit against Ronald McGraw.

On March 10, 1995, Naples and Mamounis filed their trial brief in opposition to the injunction; on April 10, 1997, McOwen filed her trial brief in opposition to the injunction.

The trial court held a hearing on the complaint on April 12, 1995. On May 10, 1995, the third-party defendants filed an answer and counterclaim against Naples and Mamounis; the latter filed their answer to the counterclaim on May 12, 1995.

On May 23, 1995, the trial court granted appellee a permanent injunction restraining Naples, Mamounis, and McOwen from further violation of the restriction in the condominium declarations. On June 1, 1995, McOwen requested separate findings of fact and conclusions of law. On June 6, 1995, McOwen filed a motion for a stay of enforcement of partial judgment. The trial court issued findings of fact and conclusions of law on June 15, 1995. At the same time Naples and Mamounis filed a motion to dismiss and/or for summary judgment on the counterclaim brought by Agency Real Estate.

On June 28, 1995, the court stayed enforcement of the injunction against McOwen. On July 5, 1995, Naples and Mamounis filed a motion to stay enforcement of the injunction. On November 20, 1995, at a status hearing, the trial court vacated the May 23, 1995 judgment entry because the entry did not determine that there was no just reason for delaying imposition of the injunction pending the outcome of the counterclaim and third-party claims. The court then issued a permanent injunction restraining Naples, Mamounis, and McOwen from violating the condominium restrictions and made the determination that there was no just reason for further delay.

On November 22, 1995, Naples and Mamounis filed a timely appeal of that decision (case No. 95CA238) as well as a motion to stay the injunction pending appeal. McOwen, as well, filed her notice of appeal on November 22, 1995 (case No. 95CA240). On December 19, 1995, McOwen filed a motion for stay. The court of appeals granted the stay and combined the two appeals herein.

### Assignments of Error

Appellant McOwen raises three assignments of error:

"The court erred in refusing to dismiss the complaint against defendant–appellant McOwen for insufficiency of service of process."

"The court erred in refusing to admit the testimony of defendant–appellant McOwen concerning representations made to her by agents for the plaintiff-appellee, in order to induce her to purchase her condominium, that residents of the Jefferson Place Condominiums were permitted to keep pets on the premises."

"The trial court erred in refusing to hold that plaintiff waived, or was estopped by its conduct from enforcing, the prohibition against pets contained in its Condominium Declaration."

Appellants Naples and Mamounis raise one assignment of error:

"The trial court abused it's [sic] discretion in granting the plaintiff/appellee an injunction enforcing the restriction contained within the condominium association's bylaws against the defendant/appellants as the plaintiff/appellee was estopped from enforcing said restriction on the basis of misrepresentations made by it's [sic] agent upon which the defendant/appellants relied to their detriment."

Given this court's findings with regard to these assignments of error, we will begin by addressing appellant McOwen's first assignment of error.

### I

■ McOwen first argues that among the affirmative defenses specifically pleaded in her answer was the defense that she had not been properly served

with process. McOwen asserts that pursuant to Civ.R. 4.1, the only valid methods of service are (1) certified mail, (2) personal service, and (3) residence service. McOwen argues the residence service attempted herein was invalid.

McOwen testified that she found a copy of the summons and complaint in her mailbox and that the envelope did not have postage, indicating that it had been merely deposited there by the process server identified in the return of service. This document indicates that residence service was made "by leaving it at her usual place of residence with *260 Jefferson Place,* a person of suitable age and discretion then residing therein." However, McOwen argues that she was not properly served under the rule and that she is therefore entitled to reversal of the judgment against her and a dismissal of the complaint pursuant to Civ.R. 12(B)(5).

 McOwen did not waive the defense of ineffective service of process by participating in the trial. The affirmative defense of insufficiency of service of process is specifically provided for in Civ.R. 12(B)(5). That rule makes clear that a defendant who wishes to assert any of the defenses set forth in Civ.R. 12(B)(1) though (B)(7) has two options. First, the defendant may simply ignore the proceedings before the trial court until after a judgment is entered and then challenge the judgment as being void. Second, the defendant may appear in the action and assert jurisdictional defenses as well as defenses on the merits. McOwen did the latter.

 Prior to 1970, R.C. 2703.08 permitted residence service by leaving a copy of the process at the defendant's "usual place of residence." Civ.R. 4.1(3) now specifically provides that residence service shall be effected by leaving the process "with some person of suitable age and discretion then residing" at the residence. Accordingly, residence service can be accomplished *only* by leaving a copy of the complaint and summons with a person at the residence. See *Hayes v. Kentucky Joint Stock Land Bank* (1932), 125 Ohio St. 359, 181 N.E. 542 and *Zachary v. White* (1971), 26 Ohio App.2d 97, 55 O.O.2d 217, 269 N.E.2d 625.

Civ.R. 4.1(3) provides:

"Residence service shall be effected by leaving a copy of the process and the complaint, or other document to be served, at the usual place of residence of the person to be served with some person of suitable age and discretion then residing therein."

Personal service results in notice. "Service by leaving may or may not result in notice. The mere fact that the summons was later received in the instant case is not decisive." *Hayes v. Kentucky Bank* (1932), 125 Ohio St. 359, 364, 181 N.E. 542, 544. Clearly, residence service pursuant to the rule was not accomplished. Furthermore, by motion, plaintiff sought appointment of a process server to

effect personal service, not residence service. Civ.R. 4.1(2) requires that "[w]hen the plaintiff files a written request with the clerk for personal service, service of process shall be made by that method. * * * Such person serving process shall locate the person to be served and shall tender a copy of the process and accompanying documents to the person to be served." The facts of this case indicate that there was no personal service and that no personal service was even attempted.

"[T]he object of statutes regulating process against a person who is 'present' within the territory of the court and over whom jurisdiction of that court *in personam* is sought or required to be obtained, is to give such notice as will in the nature of things most likely bring the attention of that person to the fact that an action has been instituted against him and that he has an opportunity to defend the same. * * * [T]he rule is that where process against a defendant appears on the face of the record to be regular, he may, nevertheless, by evidence *aliunde* the record show that a defect, irregularity or deviation from the statutory particulars has, in fact, occurred." *Krabill v. Gibbs* (1968), 14 Ohio St.2d 1, 6, 43 O.O.2d 1, 3–4, 235 N.E.2d 514, 517–518.

In the case at bar, there was no attempt at personal service, and, thus, no valid personal service was made. The attempt at residence service did not comply with the dictates of the rule, and thus no valid residence service was ever made. See *Hayes v. Kentucky Bank, supra.* Appellant McOwen was never properly served in this matter; the trial court erred in finding that McOwen received service of summons and actual notice of the action. Appellant McOwen's first assignment of error has merit.

## II

Our finding that McOwen was not properly served and our reversal of the trial court on this assignment of error are dispositive of McOwen's second and third assignments of error. Therefore, we need not address the issues raised therein.

## III

In their sole assignment of error, appellants Naples and Mamounis argue that the court abused its discretion by granting the injunction, as appellee was equitably estopped from enforcing the restriction against Naples and Mamounis due to the representations made by the Agency Real Estate representative selling the condominium properties. Naples and Mamounis dealt with Jeff Rogner and McOwen dealt with Richard Neff.

The allowance of an injunction rests within the sound discretion of the trial court and depends upon the facts and circumstances surrounding the case.

*State ex rel. Miller v. Private Dancer* (1992), 83 Ohio App.3d 27, 32, 613 N.E.2d 1066, 1069–1070; see, also, *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 59 O.O. 151, 133 N.E.2d 595, syllabus. Absent a showing of an abuse of discretion, a reviewing court cannot reverse. *Kondrat v. Byron* (1989), 63 Ohio App.3d 495, 497, 579 N.E.2d 287, 288. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Beacon Journal Pub. Co. v. Stow* (1986), 25 Ohio St.3d 347, 25 OBR 399, 496 N.E.2d 908.

"Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon that conduct." *State ex rel. Cities Serv. v. Orteca* (1980), 63 Ohio St.2d 295, 299, 17 O.O.3d 189, 191, 409 N.E.2d 1018, 1020–1021. The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, 632–633. A prima facie case of equitable estoppel requires a showing that (1) one party made factual misrepresentations, (2) that were misleading, (3) that induced actual reliance that was reasonable and in good faith, and (4) that caused detriment to the second party. *Doe v. Blue Cross/Blue Shield of Ohio* (1992), 79 Ohio App.3d 369, 379, 607 N.E.2d 492, 498–499, and *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 145, 11 OBR 215, 226–227, 463 N.E.2d 636, 647–648. Under estoppel, the law holds a principal liable for the acts of its agent beyond the scope of his actual authority if the conduct of the agent is within the scope of his apparent authority to act for and bind the principal. *Logsdon v. ABCO Constr. Co.* (1956), 103 Ohio App. 233, 3 O.O.2d 289, 141 N.E.2d 216, paragraph two of the syllabus.

An appellate court will review a lower court's application of the doctrine of equitable estoppel using an abuse-of-discretion standard. *Payne v. Cartee* (1996), 111 Ohio App.3d 580, 589, 676 N.E.2d 946, 952. A reviewing court cannot disturb the judgment of the trial court unless the record reveals that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

In the instant case, the issue of whether the court properly granted the injunction is inextricably intertwined with the issue of whether the court properly found no equitable estoppel. Naples testified that she specifically inquired upon first seeing the unit and, again, immediately before signing the purchase agreement whether dogs were allowed. Naples insists that she made it clear she would not purchase the unit otherwise and, in return, that she was assured that dogs were allowed. Naples further testified that she specifically requested copies

of the bylaws prior to purchasing her unit and, again, at closing. She did not receive them until approximately one week later.

Naples argues that she reasonably relied on the representation that pets were allowed in the condominium units. However, that reliance was to her detriment; Naples purchased property she would not have purchased otherwise, and suffered because of it. See *Doe v. Adkins* (1996), 110 Ohio App.3d 427, 437, 674 N.E.2d 731, 737–738, and *Healey v. Republic Powdered Metals, Inc.* (1992) 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1036–1037.

Naples gave uncontradicted testimony that she would not have closed on the purchase of the unit had she known that she would not be able to keep a pet in the condominium. Testimony by Alex Christoff, one of the condominium developers, indicated that if he became aware that the real estate agents selling the condominiums were making false representations he would bring the matter to their attention and tell them to stop. This testimony indicates that from time to time agents were misrepresenting the facts to prospective buyers.

Deposition testimony of Paul Peters indicated that a Mr. Byers had moved into his condominium with a dog that was dying and that the McGraws had moved in with a cat. Furthermore, testimony from Christoff indicated that Paul Peters resigned as association president in June 1994, and in his resignation letter indicated concern with representations that Agency Real Estate agents were making by not informing clients of the contents of the declarations in order to make a sale.

Appellee counters Naples's and Mamounis's arguments by quoting R.C. 5311.19, indicating that all covenants, restrictions, and conditions as set forth in deeds and declarations and all bylaws must be obeyed by condominium owners and tenants and that violations thereof "shall be grounds for actions for damages or injunctive relief, or both, brought by the unit owners association, by a unit owner or unit owners, or both."

Appellee then contends that the trial court considered the following test to determine whether a condominium restriction is reasonable: (1) whether the decision or rule is arbitrary, (2) whether the decision or rule is applied in an even-handed or discriminatory manner, and (3) whether the decision or rule was made in good faith for the common welfare of the owners and occupants of the condominium. *Worthinglen Condominium Unit Owners' Assn. v. Brown* (1989), 57 Ohio App.3d 73, 76, 566 N.E.2d 1275, 1277–1278.

The reasonableness of the condominium restriction was not at issue. At issue was whether the court abused its discretion in granting the injunction. Where, as here, there was little or no evidence to refute the clear testimony that agents selling the condominium units made misrepresentations in order to consummate

sales, and where there was little or no evidence to refute the fact that other animals had been kept on the premises, the trial court has abused its discretion by making a determination that flies in the face of the weight of the evidence.

Thus, we find Naples's and Mamounis's sole assignment of error meritorious. The decision of the trial court issuing a permanent injunction against Naples and Mamounis with regard to keeping a dog in the condominium is hereby reversed.

*Judgments reversed.*

GENE DONOFRIO and COX, JJ., concur.