[Cite as *Caston v. Woodlands of Shaker Hts.*, 2024-Ohio-2267.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ELIZABETH ANNE CASTON,       :
ADMINISTRATOR OF THE ESTATE
OF MARY ANN KETER CASTON,   :
A.K.A. MARY ANN CASTON,

      Plaintiff-Appellant,      :

                               No. 113262

      v.                    :

THE WOODLANDS OF SHAKER    :
HEIGHTS, ET AL.,

      Defendants-Appellees.    :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** June 13, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-978066

---

### *Appearances:*

Plevin & Gallucci Co., L.P.A. and Michael D. Shroge;
Flowers & Grube, Paul W. Flowers, and Kendra N. Davitt,
*for appellant*.

Reminger Co., L.P.A., Brian D. Sullivan, Danny C. Egger,
and Brianna M. Prislipsky, *for appellees*.

MARY EILEEN KILBANE, J.:

{¶ 1} Plaintiff-appellant Elizabeth Ann Caston ("Elizabeth" or "Administrator/Elizabeth"), Administrator of the Estate of Mary Ann Keter Caston ("Mary"), appeals the trial court's September 20, 2023 judgment entry, contending that the trial court erred when it partially granted the motion to enforce arbitration filed by defendants-appellees The Woodlands of Shaker Heights ("The Woodlands"), The Woodlands of Shaker Heights, LLC, CSL Shaker Heights, LLC, Sonida Senior Living, Inc. ("Sonida"), Dawn Mount ("Mount"), and Romita Campbell ("Campbell") (collectively "defendants"). For the following reasons, we reverse and remand.

**Factual and Procedural History**

{¶ 2} At all relevant times, Mary resided at The Woodlands, an assisted living community located in Shaker Heights, Ohio, pursuant to a Residence and Service Agreement ("residence agreement") executed by Elizabeth — Mary's daughter — and The Woodlands. Administrator/Elizabeth, through the complaint filed in the underlying action, alleged the following roles of the defendants. The Woodlands of Shaker Heights, LLC, CSL Shaker Heights, LLC, and Sonida owned, operated, and/or controlled The Woodlands and, therefore, were allegedly responsible for any actions or inactions of The Woodlands. Mount was the Vice President of Operations for Sonida and an administrator for The Woodlands and/or the other corporate entities and directed The Woodlands' operations to ensure the facility was staffed and operated in a safe and secure manner. Additionally, the

Woodlands employed Campbell as a licensed practical nurse, and Mary was under Campbell's care at The Woodlands. Defendants were allegedly responsible for Mary's medical care, medical treatment, and safety while she resided at The Woodlands.

{¶ 3} On April 17, 2022, Mary "eloped" from The Woodlands. While outside the confines of The Woodlands, Mary sustained injuries that resulted in her death on May 16, 2022.

{¶ 4} Almost one year later, on April 14, 2023, the Administrator/Elizabeth filed a complaint against the defendants purporting claims for negligence, medical negligence, nursing home negligence, punitive conduct, survivorship, and wrongful death. On May 23, 2023, defendants filed an amended answer to the complaint that included a copy of The Woodlands' residence agreement, including Attachment I, a Binding Arbitration Agreement ("arbitration agreement").

{¶ 5} On May 30, 2023, the defendants filed a joint motion for judgment on the pleadings and to enforce the binding arbitration agreement. The motion to enforce the binding arbitration agreement is the basis of the current appeal and, thus, we will address only this portion of the motion and not the motion for judgment on the pleadings. In the motion to enforce arbitration, defendants argued that Elizabeth, as Mary's representative, executed the arbitration agreement thereby agreeing to exclusively resolve disputes — such as those raised in Administrator/Elizabeth's complaint — by binding arbitration.

{¶ 6} The record demonstrates that Elizabeth executed Attachment I, the arbitration agreement; the signature line states she signed as the "Resident's Responsible Party." Mary was the "resident." Elizabeth also executed Attachment G, the Responsible Party Agreement, and Attachment J, the Guarantor Agreement; Mary did not sign the residence agreement nor any attachments to the document. Melesia Lovelace signed Attachments G, I, and J on behalf of The Woodlands.

{¶ 7} The arbitration agreement states the document is voluntary and not a condition of admission to The Woodlands. The first paragraph of the arbitration agreement, which references The Woodlands as "the Community," reads:

> PLEASE READ THIS ARBITRATION AGREEMENT CAREFULLY. YOU HAVE THE RIGHT TO AND THE COMMUNITY RECOMMENDS YOU ASK ANY QUESTIONS YOU HAVE AND CONSULT WITH AN ATTORNEY, FAMILY, AND/OR FRIENDS BEFORE CHOOSING TO SIGN AND ACCEPT THE TERMS AND CONDITIONS OF THIS ARBITRATION AGREEMENT. The Resident and the Community wish to work together to resolve disputes in a timely fashion saving both Parties the time that would be necessary to resolve a matter in a court of law and in a manner that minimizes both of their legal costs. In addition, the Resident and Community wish to resolve disputes in a non-public setting, and arbitration affords privacy that litigation does not. Therefore, in consideration of the mutual promises contained herein, the Community and the Resident hereby agree as follows: * * *

{¶ 8} Paragraph 15 of the arbitration agreement states:

> SIGNING BY OTHER THAN RESIDENT. If this Arbitration Agreement is signed by an individual holding him or herself out as a representative of the Resident, by signing below he or she represents and warrants that he or she holds the appropriate authority that meets all requirements under law or equity to enter into this Binding Arbitration Agreement on behalf of the Resident. Community is relying on this representation as its basis for entering into this Residence and Service Agreement and Arbitration Agreement. The Responsible Party

agrees that a contract is being formed between the Community and the Responsible Party and the direct benefit of the contract is the care and services the Resident will receive under the contract. The Responsible Party understands that by signing this contract on behalf of the Resident, a contract is being formed between the Community and the Resident.

Further, the last paragraph of the arbitration agreement reads:

By signing this Arbitration Agreement, the Resident is acknowledging that he/she understands the following: (1) the Resident has had the opportunity to, and has, carefully read this Arbitration Agreement; (2) the Resident has had the opportunity to discuss this Arbitration Agreement with an attorney of his/her choice and fully understands its terms and conditions; (3) the Resident has the legal capacity (or, in the case of execution by the Resident's agent or Representative, the legal authority) to execute this Agreement; (4) the Arbitration Agreement may not be submitted to Resident when Resident's condition prevents him/her from making a rational decision whether to agree; and (5) nothing in this Agreement shall prevent the Resident or any other person from reporting alleged violations of law to the Facility, or the appropriate administrative, regulatory or law enforcement agency.

**{¶ 9}** The defendants' motion to enforce arbitration was fully briefed and, on September 20, 2023, the trial court granted the motion to enforce the arbitration agreement as to the survivorship claim only.[1] The case was stayed and removed from the trial court's active docket pending resolution of the survivorship claim.

**{¶ 10}** On October 12, 2023, Elizabeth filed a timely notice of appeal presenting a single assignment of error: "The trial court erred as a matter of law by staying the action pending arbitration of the survivorship claim."

---

[1] In the same judgment entry, the trial court also denied the defendants' motion for judgment on the pleadings. As was stated previously, the motion for judgment on the pleadings is not a subject of this appeal. We note that The Woodlands did not appeal the portion of the trial court's order that denied its motion to enforce the arbitration agreement on the wrongful-death claim.

**Legal Analysis**

{¶ 11} The Administrator/Elizabeth appeals the trial court's grant of the defendants' motion to enforce arbitration that stayed the case pending arbitration of the survivorship claim. Specifically, the Administrator/Elizabeth argues that the trial court erred because (1) the residence agreement and attachments did not adequately identify the parties to the agreement; (2) Elizabeth lacked authority to sign the residence agreement and attachments on behalf of Mary; or (3) the arbitration agreement was unconscionable. We find Elizabeth's authority to execute the arbitration agreement is dispositive of this appeal and, therefore, we will first address that argument.

{¶ 12} Generally, we review a trial court's decision to grant a stay pending arbitration under an abuse-of-discretion standard. *Scott v. Kindred Transitional Care & Rehab.*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, ¶ 4; *see Broughsville v. OHECC, LLC*, 9th Dist. Lorain No. 05CA008672, 2005-Ohio-6733, ¶ 16. "However, because arbitration is a matter of contract, before a party can be bound by the terms of an arbitration agreement, there must be an agreement that explicitly requires the arbitration of the parties' dispute." *Scott* at ¶ 4, citing *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). We review matters of law and contract interpretation de novo. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). The issue

presented here — whether Elizabeth had apparent authority to execute the arbitration agreement — is subject to a de novo standard of review. *See N. Park Retirement Community Ctr., Inc. v. Sovran Cos.*, 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179, ¶ 7 ("[A]ppellate courts must review questions of arbitrability under the de novo standard of review applied to contracts."); *see Primmer v. Healthcare Industries Corp.*, 2015-Ohio-4104, 43 N.E.3d 788, ¶ 9 (4th Dist.) (whether the execution of a power of attorney authorized the agent to bind the principal to an arbitration agreement is subject to a de novo review).

{¶ 13} The Ohio General Assembly and Ohio courts recognize that public policy favors arbitration. R.C. Chapter 2711; *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). In support of this position, the Ohio Supreme Court has stated:

> "'Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute.'" *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 712, 590 N.E.2d 1242, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 83, 22 OBR 95, 488 N.E.2d 872. Arbitration also has the additional benefit of unburdening crowded court dockets. *Mahoning Cty. Bd. of Mental Retardation*, 22 Ohio St.3d at 83, 22 OBR 95, 488 N.E.2d 872. In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor. *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St. 3d 276, 2007 Ohio 1947, P18, 865 N.E.2d 18.

*Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15. However, prior to binding a party to an arbitration agreement, a valid contract must exist that explicitly requires arbitration of the parties' dispute. *Scott* at ¶ 4, citing *AT&T Technologies, Inc.* at 648-649.

{¶ 14} We must determine whether the trial court correctly determined that the arbitration agreement was enforceable. We focus our review on whether Elizabeth had authority to sign the arbitration agreement on behalf of her mother, Mary. Administrator/Elizabeth contends the defendant offered no explanation of the authority that allowed Elizabeth to make decisions for Mary. The defendants argue Elizabeth affirmatively represented herself as having the necessary authority to execute the arbitration agreement; The Woodlands relied upon this representation; and Elizabeth is now equitably estopped from challenging the validity of the arbitration agreement.

{¶ 15} "The relationship of principal and agent, and the resultant liability of the principal for the acts of the agent, may be created by the express grant of authority by the principal. Absent express agency, the relation may be one of implied or apparent agency." *Master Consol. Corp. v. Bancohio Natl. Bank*, 61 Ohio St.3d 570, 574, 575 N.E.2d 817 (1991).

> A finding of agency by apparent authority or agency by estoppel must be based upon words or conduct by the principal. * * * The assurances of one who assumes to act as an agent of his authority to bind another are not, standing alone, sufficient to prove his agency. The putative agent cannot create apparent agency alone.

*Koos v. Storms*, 8th Dist. Cuyahoga No. 84260, 2004-Ohio-6020, ¶ 38, citing *Information Leasing Corp. v. Chambers*, 152 Ohio App.3d 715, 740, 2003-Ohio-2670, 789 N.E.2d 1155 (1st Dist.).

{¶ 16} Mary did not sign any documents upon her admittance to The Woodlands so she did not expressly consent to the arbitration agreement. To bind a principal under apparent authority, the evidence must demonstrate:

> (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consol. Corp.* at syllabus. This test is presented in the conjunctive so the failure to establish both parts of the test is fatal to a claim that one acted with apparent authority. *Lang v. Beachwood Pointe Care Ctr.*, 8th Dist. Cuyahoga No. 100109, 2014-Ohio-1238, ¶ 4.

{¶ 17} The acts of the principal, not the agent, create apparent authority. *Scott*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, at ¶ 14, citing *Master Consol. Corp.* at syllabus. "The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority." *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, 886 N.E.2d 827, ¶ 41, citing *Master Consol. Corp.* at 576-577.

{¶ 18} Further, the party asserting the agency has the burden to show apparent authority exists. *Scott* at ¶ 15, citing *Irving Leasing Corp. v. M & H Tire Co.*, 16 Ohio App.3d 191, 195, 475 N.E.2d 127 (2d Dist.1984).

{¶ 19} This court previously determined, in *Scott* and *Lang,* claims of apparent authority were unfounded where medical facilities relied on the acts of the agent, rather than the principal, to establish the agent's authority to bind the principal to an arbitration agreement. In *Scott*, we found that a rehabilitation care resident did not cloak her daughter with the necessary authority to bind the resident to an arbitration agreement even though the daughter signed all the paperwork as part of the admission process. The arbitration agreement was not a precondition for the resident's admission. Also, there was no evidence that the resident knew of the arbitration agreement or that the resident held her daughter out as possessing sufficient authority to bind her to the arbitration agreement. The facility's insistence that the daughter sign her name as a power of attorney did not demonstrate the facility had a good-faith belief that the daughter possessed the necessary authority. Reliance on the daughter's act of signing the admission documents to establish apparent authority was insufficient.

{¶ 20} Similarly, in *Lang,* 8th Dist. Cuyahoga No. 100109, 2014-Ohio-1238, a nursing home resident's stepdaughter signed the admission documents — including an arbitration agreement — as the resident's "representative." The resident subsequently died and the resident's estate filed a lawsuit against the nursing home. The nursing home sought to resolve the matter pursuant to the arbitration agreement and argued the stepdaughter had apparent authority to bind the resident to the arbitration agreement. This court found no evidence that the resident held her stepdaughter out at the time of her admission as having authority

to execute the admission documents and, specifically, the arbitration agreement. And the nursing home's acknowledgment that the resident lacked the mental capacity to delegate authority to her stepdaughter proved the nursing home did not have a reasonable belief that the stepdaughter possessed the requisite authority to bind the resident to the arbitration agreement.

{¶ 21} Here, the record does not include a power of attorney or other documentation that demonstrates Mary expressly appointed Elizabeth as her agent to sign the arbitration agreement on Mary's behalf. *See Scott*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, at ¶ 8, 10. Thus, Elizabeth's ability to bind Mary to the arbitration agreement would have to be based upon apparent authority.

{¶ 22} Elizabeth executed the required paperwork upon Mary's admission to The Woodlands. The record is silent as to whether Mary knew about the arbitration agreement, as well as whether Mary and Elizabeth were together when Elizabeth signed the agreement. The record does not show that Mary held Elizabeth out as possessing sufficient authority to bind her to the arbitration agreement. Thus, the defendants cannot prove Mary clothed Elizabeth with authority to act on her behalf, and they cannot satisfy the first prong of the apparent-authority analysis.

{¶ 23} While failure to satisfy the first prong of the analysis is fatal to defendant's motion to enforce the arbitration agreement, we also find the record does not establish the second prong of the apparent-authority analysis: whether Mary's acts led the defendants to believe, in good faith, that Elizabeth possessed authority to bind Mary to the arbitration agreement. Defendants argue that

Elizabeth demonstrated her authority to execute the documents when (1) Elizabeth coordinated Mary's admission to The Woodlands, and Mary did not complain or object to her residency at the facility, (2) Elizabeth held herself out as a guardian and caregiver for Mary, (3) Elizabeth executed the residence agreement and attachments, and (4) Mary resided at The Woodlands for over a year pursuant to the documents signed by Elizabeth. These claims were insufficient to create a good-faith belief that Mary knew of the arbitration agreement prior to its signature and cloaked Elizabeth with the necessary authority to bind Mary prior to execution of the agreement. *See Templeman v. Kindred Healthcare, Inc.*, 8th Dist. Cuyahoga No. 99618, 2013-Ohio-3738, ¶ 23-26.

{¶ 24} The defendants' reliance on *Vogt v. Indianspring of Oakley*, 1st Dist. Hamilton No. C-110864, 2012-Ohio-4124, and *Alford v. Arbors at Gallipolis*, 2018-Ohio-4653, 123 N.E.3d 305 (4th Dist.), in support of their argument that Elizabeth has the burden to demonstrate she did not have authority to execute the arbitration agreement is misguided. This court has stated that the party seeking to demonstrate apparent authority has the burden to establish the existence of the relationship. *Scott*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, at ¶ 15, citing *Irving Leasing Corp.*, 16 Ohio App.3d 191 at 195, 475 N.E.2d 127 (2d Dist.1984) ("[T]he burden of proving such agency exists rests upon the party asserting the agency."); *see also Brown v. Extendicare, Inc.*, 2015-Ohio-3059, 39 N.E.3d 896, ¶ 49 (2d Dist.) ("[C]ontrary to *Vogt*, it was [the principal's] burden to establish the existence of [the agent's] apparent authority to act on [the principal's] behalf."); *Shorter v. Trilogy*

*Healthcare of Allen, II, LLC*, N.D.Ohio No. 3:22-cv-357, 2022 U.S. Dist. LEXIS 162419, 5 (Sept. 8, 2022), citing *Nee v. State Industries*, 2013-Ohio-4794, 3 N.E.3d 1290, ¶ 63 (8th Dist.), and *Shorter* at 7, quoting *Gardner Plumbing, Inc. v. Cottrill*, 44 Ohio St.2d 111, 113, 338 N.E.2d 757 (1975) (*Vogt* and *Alford* "turn on its head the general and well-established principal that 'the burden of proving the agency . . . [is] upon the party who asserts it.'"); and *Simmons v. Extendicare Health Servs., Inc.*, 5th Dist. Delaware No. 15 CAE 12 0095, 2016-Ohio-4831, ¶ 16 (The party asserting agency carries the burden to establish apparent authority.). The defendants bore the burden to establish the existence of Elizabeth's apparent authority.

{¶ 25} We also note that defendants' claim that Elizabeth was estopped from challenging her authority to execute the arbitration agreement is without merit. Pursuant to equitable estoppel, a principal, in certain circumstances, may be liable for the acts of her agent that exceed the scope of the agent's apparent authority. *Jefferson Place Condominium Assn. v. Naples*, 125 Ohio App.3d 394, 401, 708 N.E.2d 771 (7th Dist.1998), citing *Logsdon v. Main-Nottingham Invest. Co.*, 103 Ohio App. 233, 234, 141 N.E.2d 216 (2d Dist.1956). However, equitable estoppel is moot if no agency relationship was created authorizing the purported agent to act on behalf of the principal. *Briskey v. KAF Properties LLC*, 2019-Ohio-4563, 147 N.E.3d 1230, ¶ 37 (5th Dist.). Elizabeth's lack of apparent authority to execute the arbitration agreement renders the defendants' claim of equitable estoppel moot.

{¶ 26} Additionally, the defendants' claim of implied authority is inapplicable to the instant matter. Implied authority stems from express authority.

*Republic Waste Servs. of Ohio Hauling v. Pepper Pike Properties*, 8th Dist. Cuyahoga No. 81525, 2003-Ohio-1348, ¶ 20 (implied authority is incidental and necessary for an agent to complete the acts expressly conferred by the principal). Absent express authority granted to Elizabeth, the facts do not give rise to implied authority.

{¶ 27} Based upon the foregoing analysis, we conclude that the trial court erred when it found the arbitration agreement binding on the Administrator/Elizabeth, ordered arbitration of the survivorship claim, and granted defendants' motion to stay proceedings. Elizabeth's assignment of error is sustained.

{¶ 28} Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
EILEEN A. GALLAGHER, J., CONCUR